104 So.2d 512 (1958)
DADE COUNTY, Florida and Carl Holmer, Jr., as Supervisor of Registration, Appellants, and
John E. Cicero and Charles Girtman, on behalf of themselves and all others similarly situated, Appellants,
v.
DADE COUNTY LEAGUE OF MUNICIPALITIES and Dean Claussen, Appellees.
Supreme Court of Florida.
July 23, 1958.
*513 Darrey A. Davis, Miami, for Dade County and Carl Holmer, Jr.
Olavi M. Hendrickson, Miami, for John E. Cicero and Charles Girtman.
George S. Okell, Sr., Miami, for appellees.
THORNAL, Justice.
Appellants Dade County, Holmer, Cicero and Gritman seek reversal of a decree of the Chancellor affirming the constitutionality of a proposed amendment to the Dade County Home Rule Charter but temporarily enjoining an election for the approval or disapproval thereof until the matter is finally determined by this court.
The point to be determined is the constitutionality of the proposed charter amendment.
Pursuant to authorization provided by Article VIII, Section 11, Florida Constitution, F.S.A. (the special Dade County Home Rule provision), the electors of Dade County adopted a Home Rule Charter on May 21, 1957. On October 15, 1957, representatives of the Dade County League of Municipalities presented to the Board of County Commissioners petitions signed by 38,002 persons requesting the calling of an election to pass upon a proposed "municipal autonomy amendment" to the previously approved Home Rule Charter. *514 Without undertaking to approve the validity of the proposed amendment, the Board of County Commissioners nevertheless called a special election to be held in Dade County on February 11, 1958, in order to submit the proposal to the electors.
On January 20, 1958, appellants Cicero and Girtman, as taxpayers representative of a class, filed a complaint in the Circuit Court against Dade County and appellant Holmer, as Supervisor of Registration. The complaint sought a declaratory decree on the matter of the constitutionality of the proposed municipal autonomy amendment and requested an injunction against the holding of the special election.
On January 27, 1958, appellees Dade County League of Municipalities and Claussen, as its president, were granted leave to intervene. The intervenors subsequently filed an answer alleging that they represented twenty-two of the twenty-six municipalities in Dade County. They alleged that the proposed amendment was constitutional and naturally opposed the prayer for injunctive relief. By their answer to the complaint, appellants Dade County and Holmer, as Supervisor of Registration, conceded that the petition seeking the election contained a sufficient number of electors to motivate the exercise of the power to call the election. No question has been raised as to compliance with any procedural requirements essential to the ultimate validity of the election itself. It is also conceded that the holding of the election would involve an expenditure of approximately $85,000 and that it would be to the interest of the taxpayers of the county to have a determination of the constitutionality of the proposed amendment prior to the expenditure of this substantial sum of public funds.
By his decree the Chancellor expressed the view "that the amendment in question does not infringe, nor does it violate any section or phase" of Article VIII, Section 11 of the Florida Constitution. However, recognizing the public importance of the matter at hand and in order to obtain a determination of the basic question prior to the expenditure of substantial amounts of public funds, the Chancellor enjoined the holding of the special election until the constitutionality of the proposed amendment could be decided by this court. Reversal of that portion of the decree finding the proposed amendment to be constitutional is now sought.
It is the contention of the appellants that the proposed municipal autonomy amendment contravenes various parts of Article VIII, Section 11, Florida Constitution, and that if adopted it would for all practical purposes destroy Dade County metropolitan government as contemplated by the constitutional provision and the Home Rule Charter adopted pursuant thereto.
It is the contention of the appellees that the proposed amendment is consistent with the Constitution, that it is well within the spirit of Home Rule and that the injunction which precludes the holding of the special election should be dissolved.
At the outset we dispose of the matter of the propriety of considering the constitutionality of the proposal in advance of an election called to enable the electorate to express its approval or disapproval of the subject proposal. There is adequate precedent for doing so. We are not here confronted with an election in which the people are to have the privilege of expressing their choice as between candidates for public office. If the latter were the situation, the matter for determination would be purely political rather than judicial and the courts would not interfere. State ex rel. Landis v. Tedder, 106 Fla. 140, 143 So. 148. We are here dealing with an election involving a matter with reference to which the public interest and public rights may be determined in advance of the ballot, in order to preclude or forestall possible expenditure of substantial sums of public monies in the doing of what could be a vain and useless thing. Duval County v. Jennings, 121 Fla. 584, 164 *515 So. 356; Dubose v. Kelly, 132 Fla. 548, 181 So. 11; Gray v. Moss, 115 Fla. 701, 156 So. 262; Gray v. Winthrop, 115 Fla. 721, 156 So. 270, 94 A.L.R. 804.
Having determined the propriety of considering the constitutionality of the proposed autonomy amendment in advance of the special election, we now proceed to the main question. We do not have to concern ourselves with alleged conflicts between the existing Home Rule Charter and the provisions of the proposed amendment. This is so because the controlling law is a constitutional provision authorizing Home Rule in Dade County. The provisions of the Charter and amendments thereto are to be tested by the prescriptions of the Constitution itself. In the same vein we do not undertake to evaluate the ultimate effect of the adoption of the proposed amendment upon the continued existence or efficiency of metropolitan government in Dade County. This is so because Home Rule government means exactly what the term suggests. If the people in the affected area desire Home Rule in its broadest and most completely unrestricted sense, it is theirs to adopt so long as they comply with the provisions of the organic law. On the other hand, and subject only to the same limitation, they can have limited Home Rule. Finally, by the same token if they desire no Home Rule at all, it is for them to decide. Consequently, it would be inappropriate for this court to undertake to discuss in any measure either the wisdom or the lack of wisdom reflected by the proposed amendment.
We emphatically herewith make it clear that nothing in this opinion is to be construed as an expression of the views of this court on the subject of the wisdom or advisability of the proposal. We limit our consideration of the problem entirely to a determination of whether the proposal in its entirety contravenes the provisions of Article VIII, Section 11, Florida Constitution. We have used the word "entirety" advisedly. When a proposal of the nature here involved is assaulted on the ground that it violates the Constitution, the courts will not interfere if upon ultimate approval by the electorate such proposal can have a valid field of operation even though segments of the proposal or its subsequent applicability to particular situations might result in contravening the organic law. In other words, if an examination of the proposed amendment reveals that if adopted it would be legally operative in part, even though it might ultimately become necessary to determine that particular aspects violate the Constitution, then the submission of such a proposal to the electorate for approval or disapproval will not be restrained. Gray v. Moss, supra; Gray v. Winthrop, supra.
The so-called municipal autonomy amendment to the Dade County Home Rule Charter which is here involved reads as follows:
"Section 10.01: Reservation of Certain Powers in Municipalities.
"A. Anything to the contrary herein notwithstanding, neither the political autonomy nor the right of self-government or self-determination of any of the municipalities in Dade County shall be infringed upon, disturbed, or interfered with, and they shall maintain their continuous right to exercise all powers whether granted by their several charters, or by Special Act, or by General Law. This, however, shall not and does not apply to Section 4.04 dealing with Assessment and Collection of Taxes, nor with Sub-paragraph (18) of Paragraph A of Section 1.01 which permits the Dade County Commissioners to set reasonable minimum standards for all governmental units in the County for the performance of any service or function.
"B. All existing ordinances inconsistent herewith shall no longer remain in force and effect."
Consistent with the rules which we have previously announced in order to justify *516 an injunction against the submission of the proposal to the electorate of Dade County it would be necessary for this court to find that the proposed amendment was unconstitutional in its entirety.
With regard to Home Rule in Dade County we have heretofore several times announced that the provisions of the Home Rule Charter must be consistent with and must do no violence to the provisions of Article VIII, Section 11, Florida Constitution, pursuant to which the charter is adopted. Gray v. Golden, Fla. 1956, 89 So.2d 785; Dade County v. Kelly, Fla. 1958, 99 So.2d 856; Chase v. Cowart, Fla., 102 So.2d 147.
With the provisions of the proposed amendment in mind we now refer to those provisions of Article VIII, Section 11, Florida Constitution, by which the validity of the proposal must be tested. We quote from Article VIII, Section 11, the following:
"(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:

* * * * * *
"(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof; to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central metropolitan government in Dade County.
"(c) May change the boundaries of, merge, consolidate and abolish and may provide a method for changing the boundaries of, merging, consolidating and abolishing from time to time all municipal corporations, * * *.
"(d) May provide a method by which any and all of the functions or powers of any municipal corporation or other governmental unit in Dade County may be transferred to the Board of County Commissioners of Dade County.
"(e) May provide a method for establishing new municipal corporations, special taxing districts, and other governmental units in Dade County from time to time and provide for their government and prescribe their jurisdiction and powers.
* * * * * *
"(g) Shall provide a method by which each municipal corporation in Dade County shall have the power to make, amend or repeal its own charter. Upon adoption of this home rule charter by the electors this method shall be exclusive and the Legislature shall have no power to amend or repeal the charter of any municipal corporation in Dade County. (Emphasis added.)
* * * * * *
"(5) Nothing in this section shall limit or restrict the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties in the State of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida, and the home rule charter provided for herein shall not conflict with any provision of this Constitution nor of any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized in this section nor shall any ordinance enacted in pursuance to said home rule charter conflict with this Constitution or any such applicable general law except as expressly authorized herein, nor shall the charter *517 of any municipality in Dade County conflict with this Constitution or any such applicable general law except as expressly authorized herein, provided however that said charter and said ordinances enacted in pursuance thereof may conflict with, modify or nullify any existing local, special or general law applicable only to Dade County.
"(6) Nothing in this section shall be construed to limit or restrict the the power of the Legislature to enact general laws which shall relate to Dade County and any other one or more counties of the State of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida relating to county or municipal affairs and all such general laws shall apply to Dade County and to all municipalities therein to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict therewith, and shall supersede any provision of any charter of any municipality in Dade County in conflict therewith."
An examination of the constitutional provisions which we have quoted reveals in substance that (1) the electors of Dade County are granted power to adopt, revise and amend a home rule charter, (2) the charter may grant full powers to the Board of County Commissioners, (3) the charter may change boundaries, merge, consolidate and abolish municipal corporations and may provide a method for accomplishing these things, (4) the charter may provide a method by which any and all functions of the municipality may be transferred to the Board of County Commissioners, (5) the charter may provide a method for establishing new municipal corporations, and (6) the charter shall provide a method by which municipal corporations in Dade County shall have the power to make, amend or repeal their own charters. As a part of the same subsection (Article VIII, Section 11 (g)) it should be pointedly noted that the Constitution provides that upon the adoption of the home rule charter, "this method" (the method which the charter provides for municipalities to make, amend or repeal their charters) "shall be exclusive and the Legislature shall have no power to amend or repeal the charter of any municipal corporation in Dade County."
The language which we have last quoted from the Constitution necessarily must be read in conjunction with the language of Article VIII, Section 11(5) and (6), which in substance preserves to the Legislature the power to pass general laws which would be applicable to the municipalities of Dade County. The sum of these last comments is simply that it is perfectly obvious from an examination of the constitutional provisions that it was intended and in specific words provided that the making, amending or repealing of the charters of Dade County municipalities could be accomplished only in the fashion provided by the county home rule charter after its adoption and that thereafter the Legislature would have no power to regulate or control the municipalities in the county by special or local acts. The plain objective to be accomplished by this provision was to endow the people of Dade County with the power to exercise home rule in the matter of municipal charters and upon the adoption of the home rule charter to preclude for all time the control of the government of municipal corporations by special or local law. The so-called "local bill evil" is not given specific recognition by the language of the Constitution but implicit in the language used is the proposition that upon the adoption of the county home rule charter local bills for the governance of Dade County municipalities are a thing of the past.
Applying what we have said up to this point to the provision of the proposed municipal *518 autonomy amendment we find that by the proposal "municipalities in Dade County * * * shall maintain their continuous right to exercise all powers whether granted by their several charters, or by special act or by general law." We have italicized the words "or by special act" appearing in the last quoted language contained in the proposed autonomy amendment. It is this particular language  and this alone  with regard to which we express grave doubts as to constitutionality. In other words, inasmuch as the Constitution itself expressly denies to the Legislature the power to amend or repeal the charter of any Dade County municipality after the approval of the county home rule charter except insofar as such municipalities may be affected by general laws, it appears to us that the provision of the proposed autonomy amendment which would save to Dade County municipalities the right to exercise powers granted by subsequent special acts would be in direct contravention of the provisions of the Constitution itself.
Consistent with the rules governing the authority of the courts to pass on matters of this nature in advance of an expression by the electorate, we hasten to add that the particular point which we have last discussed is related only to that particular phrase in the proposed autonomy amendment. While there may be a doubt as to the constitutionality of the "special act" phrase, the proposed autonomy charter amendment is otherwise consistent with the provisions of the Constitution. It therefore appears that there is a proper scope of operation for the autonomy amendment and it is not invalid in its entirety. The invalidity of the entire amendment not having been shown the submission of the amendment to the electorate for approval or disapproval is proper. We do not here in finality adjudicate the invalidity of the language we have quoted ("or by special act") because we are not yet confronted with the matter of a special act dealing with the powers of a Dade County municipality. We can only do so if and when the occasion arises. The possibility of such an occurrence, however, does not destroy the proposal nor does it prevent its submission to the electorate.
The appellants offer the further contention that the provisions of the proposal come into conflict with Section 5 of the existing county home rule charter which section deals with the continuance of municipalities, municipal powers, municipal charters, changes in municipal boundaries, creation of new municipalities, contracts for other units of government and franchises and utility taxes. We do not here find it necessary to reconcile any such alleged conflicts should they exist. It is sufficient to point out that if the electorate approves the proposed municipal autonomy amendment then the provisions of such amendment will become a part of the county home rule charter and being the latest expression of the electorate on the subject, any conflicting provisions would have to be reconciled subject to the controlling aspects of the latest expressions of the electorate on the subject. Conflicts with the existing charter would not invalidate the proposed amendment thereto.
We wish to emphasize that we are not here finding the existence or non-existence of such alleged conflicts. In a proceeding of this kind the courts cannot with propriety go beyond measuring the proposal by the standards set in the Constitution itself. Any effort on our part to attempt to reconcile the provisions of the existing charter with the proposed amendment prior to the approval of the latter would be an encroachment on the political functions of the electorate and then would amount to nothing more than an advisory opinion on our part in a matter which is beyond our immediate judicial province.
Subject to the conditions and potential exceptions which we have hereinabove pointed out, the finding of the Chancellor that the proposed municipal autonomy amendment sufficiently comports with the Florida Constitution to require it to be submitted to the electorate is affirmed. The *519 temporary injunction imposed by the final decree should be dissolved. The cause is remanded to the circuit court for the entry of an order consistent with this opinion which order shall make appropriate provision for the calling of an election as requested by the appellees.
It is so ordered.
TERRELL, C.J., and THOMAS, ROBERTS and O'CONNELL, JJ., concur.