394 So.2d 981 (1981)
MIAMI DOLPHINS, LTD., Appellant,
v.
METROPOLITAN DADE COUNTY, etc., Appellee.
Nos. 56008, 55991.
Supreme Court of Florida.
January 29, 1981.
Rehearing Denied April 1, 1981.
*982 Dan Paul of Paul & Thomson, Miami, for appellant.
Robert A. Ginsburg, County Atty., Vicki Jay, Asst. County Atty., and Stuart Simon, Miami, for appellee.
ADKINS, Justice.
These are consolidated appeals from a final declaratory judgment of the Circuit *983 Court of Dade County specifically passing upon the constitutionality of section 125.0104, Florida Statutes (1977), and a decision of the Third District Court of Appeal. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972); Fla.R.App.P. 9.030(a)(1)(A) (ii).
On April 4, 1978, the Dade Metropolitan County Commission (hereinafter referred to as the commission), pursuant to section 125.0104, Florida Statutes (1977), known as the "Local Option Tourist Development Act" (hereinafter referred to as the act), created a Tourist Development Council which in turn developed and submitted to the commission a tourist development tax expenditure plan. The plan was adopted by the commission, subject to voter approval at an October 5, 1978, election. Following the commission's actions certain Dade County residents filed an action in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County seeking to enjoin the referendum on the plan, and, on September 8, 1978, an injunction was granted. No appeal was taken from the circuit court's order of September 8.
On October 4, 1978, the commission, by ordinance (hereinafter referred to as the ordinance), adopted another tourist development tax expenditure plan (hereinafter referred to as the plan), similar to the prior one, and placed it on the ballot for a November 7, 1978, election. The plan proposed a "tourist room tax at the rate of two percent on hotel, motel, and similar accommodations rented for a term of six months or less." The revenues of the tax were to be used, among other things, to "modernize and improve and the present Orange Bowl Football Stadium."
A group of Dade County citizens, joined by the intervenor/appellant, Miami Dolphins (hereinafter referred to as the appellant), filed an action against Metropolitan Dade County (hereinafter referred to as the county or appellee), for injunctive and declaratory relief seeking to prevent a referendum on the plan. On October 27, 1978, the circuit court issued an order enjoining the referendum and declaring the ballot question invalid because of its failure to meet statutory requirements, its vagueness, and its misleading nature. The circuit court deferred passing on constitutional issues raised by the plaintiffs.
The county appealed the order of October 27 to the Third District Court of Appeal, and on November 2, 1978, that court issued an order, with an opinion to follow, reversing the circuit court. The opinion,[1] filed on December 12, 1978, held that the ballot question as framed did not violate statutory requirements, that it was not misleading, and that "the other contentions raised by the plaintiffs," i.e., the constitutional objections, were insufficient as a basis for enjoining the holding of a tourist tax referendum. In the meantime, the plan had been placed on the November 7 ballot and been approved by the voters.
Following the Third District Court of Appeal's ruling on the matter, the circuit court, on December 22, 1978, issued a final declaratory judgment finding the act constitutional both facially and as applied and the ordinance implementing the plan lawful and in compliance with the act.
It is initially contended that no valid tourist development plan was adopted and so the ordinance fails to comply with the requirements of the act. The city of Miami, which owns the Orange Bowl, and the appellant are parties to an agreement governing the latter's use of the stadium for professional football games. The agreement requires the Dolphins' consent for any renovation or construction planned for the Orange Bowl. At the time the plan was adopted, no agreement existed between the city, the county, or the Dolphins permitting the county to implement its proposed renovations. Thus, argues appellant, the plan contained in the ordinance was legally defective and invalid. Appellant reasons that since "a condition precedent to the passage of the ordinance and the referendum is the adoption of a valid tourist development tax plan," the requirements of the act have not been met.
*984 The plan in the case sub judice does, however, comply with the requirements of the act. Section 125.0104(4)(c), Florida Statutes (1977), provides as follows:
The plan shall set forth the anticipated net tourist development tax revenue to be derived by the county for the 24 months following the levy of the tax; the tax district in which the tourist development tax is proposed; and a list, in the order of priority, of the proposed uses of the said tax revenue by specific project or special use as the same are authorized under subsection (5). The plan shall include the approximate cost or expense allocation for each specific project or special use.
The statute does not require that the plan submitted to the board include evidence that each proposal contained therein is feasible and permissible. The plan adopted by the commission complied with each of the requirements enunciated in section 125.0104(4)(c), Florida Statutes, and the absence of an agreement between the city and the county on the proposed renovation does not effect its validity.
Appellant also argues that the plan improperly attempts to transfer a function from a municipality to a county without complying with article VIII, section 4, of the Florida Constitution, which provides as follows:
Transfer of powers.  By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
According to the appellant, the plans for renovation of the Orange Bowl would require transferring the jurisdiction thereover from the city to the county, would be accomplished without a vote by the electors of the transferor city, and therefore would be unconstitutional. In support of its argument, appellant cites this Court's decision in Sarasota County v. Town of Longboat Key, 355 So.2d 1197 (Fla. 1978).
In Sarasota, four cities challenged an ordinance adopted by the Sarasota County Commission proposing a referendum on certain amendments to the county charter. The amendments, which were to be voted on by the residents of Sarasota County, would transfer the responsibility for five distinct governmental functions (air and water pollution control, parks and recreation, roads and bridges, planning and zoning, and police), from four Sarasota County cities to the county. The trial court granted a permanent injunction prohibiting the referendum on the grounds that the ordinance violated article VIII, section 3, of the Florida Constitution and was unconstitutionally vague. On appeal, this Court held that the ordinance did not violate article VIII, section 3, of the Constitution and was not unconstitutionally vague, but affirmed the trial court's order on the grounds that the ordinance violated article VIII, section 4, of the Constitution.
A plain reading of Article VIII, Section 4 reflects that a transfer of governmental powers requires distinctive procedures for the initiation of a transfer, that is, "by law or by resolution of the governing bodies of each of the governments affected." We think it clear from the specificity of the procedure in Section 4 that the "by law" reference connotes the need for a separate legislative act addressed to a specific transfer, in the same manner that two or more resolutions of the affected governments would address a specific transfer.
Id. at 1201 (footnote omitted).
The holding in Sarasota does not, however, compel a similar holding here. In Sarasota, the county sought to transfer certain functions or powers to itself from the cities. Had the ordinance been voted on and approved, the county would have acquired full responsibility for five functions previously exercised by the city. No longer would the cities involved have had any control over those functions, which would have *985 become the responsibility of the county alone. Such is not the case here.
The ordinance here does not seek to transfer jurisdiction over the Orange Bowl, nor even jurisdiction over the maintenance thereof, from the city of Miami to Dade County. It simply allocates certain tax revenues for the renovation of the stadium. The county has indicated that it will offer the money to the city and does not intend to exercise control over the project.
The plan does not require that the city transfer any jurisdiction over the stadium to the county. It is simply being asked to accept a grant of funds to be used for a particular purpose. Clearly the ordinances in Sarasota and here have entirely different purposes and effects, and while that in Sarasota violated article VIII, section 4, with its improper attempt to transfer powers, the one here attempts nothing of the kind. The ruling in Sarasota, therefore, does not apply here.
Further, any questions raised concerning whether the county can give the money to the city to use for renovations rather than insisting upon retaining control itself over the project are laid to rest by the provisions of section 125.0104(5)(a), Florida Statutes. Under that section the county may implement its renovation plans "through service contracts and leases with persons who maintain and operate adequate existing facilities." The county need not acquire control over the Orange Bowl in order to renovate the stadium; instead, it can contract that the city will handle all of the work. Utilizing the provisions of section 125.0104(5)(a), Florida Statutes, the county may properly provide the city the money for the renovation, and no powers will have been improperly transferred in violation of article VIII, section 4, of the Florida Constitution.
The second point on appeal is that the county's referendum election was void, and so the ordinance passed thereby is invalid. On that point, appellant contends that the district court applied the wrong standard of review to the referendum election challenge. The district court, in its opinion reviewing the order enjoining the referendum, addressed the issues raised concerning the validity of the referendum and reversed the trial court, holding that the ballot question was neither in violation of section 125.0104(6)(b), Florida Statutes, nor grossly misleading. Reviewing the trial court's decision on those grounds and finding the ballot question proper, the district court declined to rule on whether the ordinance and act were invalid. The court's refusal to review any questions other than those pertaining to the validity of the referendum itself was based on Dulaney v. City of Miami Beach, 96 So.2d 550 (Fla.3d DCA 1957).
In Dulaney, a group of taxpayers sought a decree enjoining the city of Miami Beach from holding a special election on a zoning ordinance passed by the city council. Refusing to enjoin the referendum, the chancellor stated: "I would not attempt to and do not think I properly should determine any legality of ordinance that might result from such an election. The question before the Court is whether or not the election itself should be enjoined, and I do not believe that a showing, a sufficient showing, has been made under this case to enjoin the election." Id. at 551. The Third District Court of Appeal affirmed the chancellor, observing:
We are presented therefore with the question: Was it error for the chancellor to fail to rule on the validity of the ordinance proposed? We think that the chancellor was correct in his position.
There is a vast difference between the question of the legality of the election and the validity of the ordinance that might result. It would be true that an election held to pass an ordinance which was later held to be invalid would be useless, but it would not follow that such an election was illegal. An election should not be held if the ordinance proposed was clearly invalid on its face. In the instant case such a certainty does not exist. It follows that the validity of the proposed ordinance can best be considered not under an injunction proceeding *986 hastily brought and defended prior to an election already called, but in a suit brought for that purpose by affected property owners.
Id. at 551-552.
It was on the basis of the language above that the district court in this case decline to address any issues raised by the appellant other than those addressing the validity of the referendum ballot question. In light of this Court's later opinion in Dade County v. Dade County League of Municipalities, 104 So.2d 512 (1958), however, the district court's reliance on Dulaney was misplaced.
In Dade County, another taxpayer group sought both a declaratory judgment on the constitutionality of a proposed amendment to the county charter and an injunction prohibiting an election thereon. The trial court affirmed the constitutionality of the proposal, but temporarily enjoined the election until this Court could rule on the question. Our opinion in the case, which approved the circuit court's injunction, stated:
At the outset we dispose of the matter of the propriety of considering the constitutionality of the proposal in advance of an election called to enable the electorate to express its approval or disapproval of the subject proposal. There is adequate precedent for doing so. We are not here confronted with an election in which the people are to have the privilege of expressing their choice as between candidates for public office. If the latter were the situation, the matter for determination would be purely political rather than judicial and the courts would not interfere. We are here dealing with an election involving a matter with reference to which the public interest and public rights may be determined in advance of the ballot, in order to preclude or forestall possible expenditure of substantial sums of public monies in the doing of what could be a vain and useless thing.
Id. at 514 (citations omitted).
In light of our decision in Dade County, the district court here erred in holding that the "other contentions," i.e., those involving issues other than the validity of the election itself, were insufficient as a basis for enjoining the election. Clearly, the constitutionality of an ordinance such as the one here can be considered and determined before a referendum is held on the ordinance.
What then, of the district court's failure to consider the other issues raised by the appellants, i.e., the vagueness of the act, equal protection concerns, the validity of the enactment of the ordinance, and the validity of the ordinance itself? It makes no difference in our decision here. Each of the issues which the district court refused to review has been resolved against the appellant elsewhere in this opinion. All were raised as issues on appeal, and we have found in favor of the appellee on each. Although the district court did not review all of the issues which it should have, we have done so.
We now consider the second part of appellant's second issue on appeal; the contention that the referendum was invalid. Its validity is challenged on two grounds: 1) That the ballot language did not comply with the wording required by section 125.0104(6)(b), Florida Statutes (1977); and 2) that the ballot language was misleading.
We are in agreement with the district court's holding that the language employed on the ballot complied with the provisions of the Act. Section 125.0104(6)(b), Florida Statutes (1977), provides:
(b) The governing board of the county levying the tax shall arrange to place a question on the ballot at the next regular or special election to be held within the county, substantially as follows:
... . . FOR the Tourist Development Tax
... . . AGAINST the Tourist Development Tax.
The ballot in the instant case, in pertinent part, read:
FOR the Tourist Room Tax
AGAINST the Tourist Room Tax
The ballot contained "substantially" the same wording as the wording suggested in the statute. Furthermore, the ballot contained *987 an explanation of the purposes for which the tourist room tax would be used. Although one might argue that "tourist development tax" is a clearer, more dispositive choice of words than "tourist room tax," and although all other counties which have held referendums under chapter 125 have used the words "tourist development tax," the statute only requires that the language on the ballot be substantially the same as that in the statute. The language used on the appellee's ballot met that requirement.
Appellant's contention that the ballot language was misleading is likewise incorrect. The law simply requires that the ballot give a voter fair notice of the decision which he must make.
"[T]he only requirements in a [sic] election of this kind are that the voter should not be misled and that he have an opportunity to know and be on notice as to the proposition on which he is to cast his vote... . All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide."
Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954).
The ballot here met the above requirements. It contained a brief description of the tax plan, i.e., the rate, the group on whom it would be imposed, the expected revenues, and the planned expenditure of those revenues. While there certainly are many details of the plan not explained on the ballot, we do not require that every aspect of a proposal be explained in the voting booth:
It is a matter of common knowledge that many weeks are consumed, in advance of elections, apprising the electorate of the issues to be determined and that in this day and age of radio, television, newspaper and the many other means of communicating and disseminating information, it is idle to argue that every proposition on a ballot must appear at great and undue length.
Id. at 798. Clearly, the district court was proper in ruling that the ballot in this case was not misleading.
Appellant's third point on appeal is that the act unconstitutionally delegates legislative authority to the Department of Revenue or is void for vagueness, and in support thereof, cites the decisions of this Court in Department of Business Regulation v. National Manufactured Housing Federation, Inc., 370 So.2d 1132 (Fla. 1979); Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968). As we observed in Conner:
[W]hen the statute is couched in vague and uncertain terms or is so broad in scope that no one can say with certainty, from the terms of the law itself, what would be deemed an infringement of the law, it must be held unconstitutional as attempting to grant to the administrative body the power to say what the law shall be.

Id. at 211.
Appellant contends that section 125.0104, Florida Statutes, fails to provide adequate guidelines or criteria as to who is subject to the tourist tax, even if read in pari materia with chapter 212, Florida Statutes (1977), as appellee contends it should be, and that in administering its provisions, the Department of Revenue will be forced to determine what the law is. Appellant further contends that the act was not intended to be read in pari materia with chapter 212, Florida Statutes, or more particularly section 212.03, Florida Statutes, and that such is demonstrated by the contradictory provisions of the two. We are inclined, however, to adopt the reasoning of the circuit court regarding this argument.
The circuit court found that the act is to be read in pari materia with chapter 212, Florida Statutes, the state transient rentals tax, and that when such is done, the former is "complete and whole in every way with all legal policies of significance set and enacted by the legislature... ." The trial court found so for three reasons: First, because section 125.0104(2), Florida Statutes, provides that the provisions of chapter 212 are to apply to the administration of *988 taxes levied under the former. Second, because section 125.0104(3)(f) provides that the receipt, accounting for, and remitting of taxes collected pursuant to the act is to be in the time and manner provided by section 212.03, Florida Statutes. And third, because of the rule that when a statute is susceptible to two interpretations, one of which would make it unconstitutional, the court is to adopt the interpretation which will uphold the statutes' validity. Redwing Carriers, Inc. v. Mason, 177 So.2d 465 (Fla. 1965).
When read in pari materia with chapter 212, Florida Statutes, the act contains all of the elements and establishes the policy necessary to implement the legislature's goals. Any omissions therein are to be filled by the applicable provisions of the transient rentals tax. In the event of conflict between any provisions of the two, the provisions of the act will govern. While its provisions are used to fill any gaps in the act, the transient rentals tax is simply the base on which the act rests; the act may modify and conflict with the transient rentals tax statute as needed.
That the text of the act does not direct that it be read in pari materia with chapter 212, Florida Statutes, is irrelevant. Statutes may be read in pari materia without such being specifically directed, because "[l]aws should be construed with reference to the constitution and the purpose designed to be accomplished, and in connection with other laws in pari materia, though they contain no reference to each other." American Bakeries Co. v. Haines City, 131 Fla. 790; 180 So. 524, 528 (Fla. 1938). While the legislature may direct that statutes be read in pari materia, the absence of such a directive does not bar construing two statutes in that manner.
Clearly, the act in the case sub judice need not be stricken as an unconstitutional delegation of legislative powers. If read in conjunction with chapter 212, it passes muster for completeness, certainty and reviewability. It is not unconstitutionally vague; this Court's in pari materia construction makes it complete and remedies any vagueness. Given that an interpretation upholding the constitutionality of the act is available to this Court, it must adopt that construction.
The appellant's final issue on appeal is that the tourist room tax violates both the privileges and immunities clause and the equal protection clause of the United States Constitution. Citing Austin v. New Hampshire, 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975), appellant argues that the county is attempting to impose a tax on nonresidents alone on the privilege of renting living space for less than six months.
In Austin, the state of New Hampshire enacted a commuters income tax on nonresidents' New Hampshire-derived income in excess of $2,000. The law initially imposed a tax as well on the income earned by New Hampshire residents outside the state, but because of various exemptions, no New Hampshire resident was taxed on his out-of-state income. Thus, as the Court observed, "the State taxes only the income of nonresidents working in New Hampshire; it is on the basis of this disparate treatment of residents and nonresidents that appellants challenge New Hampshire's right to tax their income from employment in that state." Id. at 659, 95 S.Ct. at 1193 (footnote omitted). The Court held that the commuters income tax violated the privileges and immunities clause of the Constitution, noting "[t]he overwhelming fact, as the State concedes, is that the tax falls exclusively on the income of nonresidents; and it is not offset even approximately by other taxes imposed upon residents alone." Id. at 665, 95 S.Ct. at 1197. (footnote omitted).
The appellant here contends that the tax in Austin and the tax imposed by Dade County are "indistinguishable," as the tax here is "to be paid by nonresidents while residents are exempted." The appellant is, however, incorrect. The tax imposed by Dade County does not distinguish between residents and nonresidents, rather, it is imposed, with certain exceptions, on anyone who rents certain kinds of living space for a term of six months or less. Section 125.0104(3)(a) *989 provides "[i]t is declared to be the intent of the Legislature that every person who rents, leases, or lets ... for a term of 6 months or less is exercising a privilege which is subject to taxation under this section." (Emphasis supplied). Likewise, the ordinance provides "There shall be levied and imposed ... a tourist development room tax at a rate of two percent ... of the total rental charged every person who rents, leases or lets for consideration any living quarters ... for a term of six (6) months or less." (Emphasis supplied). Neither of the above taxes out-of-state renters alone; instead, both provide that the tax is to be imposed on all renters of the covered types of premises. Appellant's assertions notwithstanding, the nonresident is not treated more onerously than the resident. The ruling in Austin is not applicable here, and the privileges and immunities clause has not been violated.
Nor, proceeding to the second prong of appellant's constitutional argument, does the act, when read in pari materia with chapter 212, and as administered, violate the equal protection clause. Appellant's observation that discrimination in tax burden against nonresidents violates the equal protection clause of the federal constitution is without merit, since, as noted above, there is no discrimination against nonresidents in either the act or the ordinance.
Appellant further argues that the act violates the equal protection clause because the various classifications and exemptions created by chapter 212, the act, and the rules adopted by the Department of Revenue are not rationally connected to any legitimate state interest and are arbitrary. That position is incorrect for two reasons. First, if the department's rules conflict with the act, then it is those rules which should be stricken; not the act. Second, as the circuit court noted in its opinion, "That comprehensive enactment [chapter 212] and its component transient rentals tax have been incorporated in the statute laws of Florida for virtually 30 years and have withstood a number of court tests. With the state transient rentals tax as its base, the statute authorizing counties to enact similar tourist development taxes appears constitutionally firm." See also Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950), and Thompson v. Intercounty Tel. & Tel. Co., 62 So.2d 16 (Fla. 1952). Neither the act nor the ordinance violate the Florida or United States Constitutions.
Having considered each of the points on appeal raised by the appellant, and having found that none warrant a reversal of the decisions of the circuit court and the district court, both decisions are hereby affirmed.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ENGLAND, J., dissents.
NOTES
[1] Metropolitan Dade County v. Shiver, 365 So.2d 210 (Fla.3d DCA 1978).