940 So.2d 1144 (2006)
CITIZENS FOR RESPONSIBLE GROWTH, a political committee, Terry Gannon, Chairman, Linda Chaney, Treasurer, and Harry Metz, Deputy Treasurer, and Intervenors Muriel Desloovere and Cheri Haigley, Appellants/Cross-Appellees,
v.
CITY OF ST. PETE BEACH, a Florida municipality, Appellee/Cross-Appellant.
No. 2D06-550.
District Court of Appeal of Florida, Second District.
August 18, 2006.
Rehearing Denied September 6, 2006.
*1146 Kenneth L. Weiss, Treasure Island, and R. Michael Larrinaga of The Larrinaga Law Group, P.A., Tampa, for Appellants/Cross-Appellees.
Thomas G. Pelham of Fowler, White, Boggs, Banker, Tallahassee, and Timothy P. Driscoll, St. Petersburg, for Appellee/Cross-Appellant.
PER CURIAM.
In this appeal we consider whether the electorate of a Florida city should be given the opportunity to vote for or against amendments to the municipal charter that would require voter approval for certain changes to the city's land use and community development plans. After collecting the required signatures, Citizens for Responsible Growth, a political action committee, properly submitted four petitions for referenda to amend the charter of the City of St. Pete Beach. The proposed amendments seek to circumscribe the City Commission's authority to amend the City's comprehensive land use and community development plans as defined in chapter 163, Florida Statutes (2005), by requiring voter approval of such changes. The four proposed amendments qualified for placement on the ballot. Rather than placing the proposals on the ballot, however, the City filed for declaratory relief pursuant to chapter 86, Florida Statutes (2005), claiming that the all-encompassing legislative directives contained in chapter 163 preempted the proposed amendments. The defendants in the action are the political action committee, its officers, and two intervening private citizens. (Hereafter, this opinion will refer to the defendants collectively as "the Citizens.")
After a hearing, the circuit court entered a summary final judgment, an order denying the Citizens' motion for rehearing, a judgment on the pleadings, and an order supplementing the final summary judgment and judgment on the pleadings. These orders determined that the proposed amendments contained in Petitions I, III, and IV were unconstitutional as having been preempted and, therefore, would not appear on the ballot. The Citizens appeal from this judgment. The circuit court also ruled that the proposed amendment contained in Petition II did not suffer from a constitutional infirmity and allowed it to be placed on the ballot. The City cross-appeals that determination. We reverse the Citizens' main appeal and affirm the City's cross-appeal, and hold that all four proposals should be presented to the electorate of the City of St. Pete Beach.
We begin with the premise that "all political power is inherent in the people and that we must, if possible, interpret the amendment as constitutional." Charlotte County Bd. of County Comm'rs v. Taylor, 650 So.2d 146, 148 (Fla. 2d DCA 1995) (citing Miami Dolphins, Ltd. v. Metro. Dade County, 394 So.2d 981 (Fla. 1981)). Our consideration of the issue is limited to whether the challenged petitions, individually, contravene the Florida Constitution as inconsistent with state law. When a petition can "have a valid field of operation even though segments of the *1147 proposal or its subsequent applicability to particular situations might result in contravening the organic law," it must be submitted to the electorate. Dade County v. Dade County League of Municipalities, 104 So.2d 512, 515 (1958). Only when a petition is unconstitutional in its entirety may it be precluded from placement on the ballot. This avoids the possible expenditure of substantial amounts of public money to do a "vain and useless thing." Id. at 514.
If the opponent of a proposed amendment "in good faith questions the constitutionality of the ordinance in its entirety and on its face[,] the court may properly consider that question in advance of an election concerning its approval." W. Palm Beach Ass'n of Firefighters, Local Union 727 v. Bd. of City Comm'rs of the City of W. Palm Beach, 448 So.2d 1212, 1214 (Fla. 4th DCA 1984). "The principle that a municipal ordinance is inferior to state law remains undisturbed. Although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation by municipalities may not conflict with state law. If conflict arises, state law prevails." Id. at 1214-15 (quoting Miami Beach v. Rocio Corp., 404 So.2d 1066, 1070 (Fla. 3d DCA 1981)). See also Tribune Co. v. Cannella, 458 So.2d 1075, 1079 (Fla.1984) (holding that "the legislative scheme of the Public Records Act has preempted the law relating to any delay in producing records for inspection" and could not be contravened by city policy).
As a threshold argument, the Citizens claim that the circuit court lacked jurisdiction to entertain the City's declaratory action. We disagree. The circuit court properly analyzed this question in its order on jurisdiction. See Gaines v. City of Orlando, 450 So.2d 1174 (Fla. 5th DCA 1984) (holding that the circuit court has discretion to make a pre-election determination of the facial constitutionality of any proposed amendment slated to appear on the ballot). Although the circuit court did not precisely determine that all parties were properly before the court, we note that the parties stipulated to the court's entry of a supplemental order finding that the defendants were proper party defendants to this declaratory judgment action.

The Proposed Amendments to the City Charter
The Citizens' petitions presented four proposed amendments to the City charter for the electorate's considerations. Because our dispositions are based on arguments applicable to one or more of these petitions, the proposed amendments[1] are set forth in their entirety below:
Petition I
Section 3.15 Voter approval required for approval of comprehensive land use plan or comprehensive land use plan amendments. A comprehensive plan ("Plan") or comprehensive plan amendment ("Plan Amendment") (both as defined in Florida Statutes Chapter 163) shall not be adopted by the City Commission until such proposed Plan or Plan Amendment is approved by the electors in a referendum as provided in Florida statute Section 166.031 or by the City Charter or as otherwise provided by law. Elector approval shall not be required for any Plan or Plan Amendment that affects five or fewer parcels of land or as otherwise prohibited by Florida *1148 Statutes including but not limited to Florida Statutes [sic] Section 163.3167. This amendment shall become effective immediately upon approval by a majority of the electors voting in such referendum.
Petition II
Section 3.16 Unanimous City Commission approval required for approval of comprehensive land use plan or comprehensive land use plan amendments affecting five or fewer parcels. A comprehensive land use plan ("Plan") or comprehensive land use plan amendment ("Plan Amendment") (both as defined in Florida Statutes Chapter 163), which Plan or Plan Amendment affects five or fewer parcels as defined in Florida Statutes Section 163.3167, shall only be adopted by the City Commission (the "Commission") by a unanimous vote of the Commission. This charter amendment shall become effective immediately upon approval by a majority of the electors voting in such referendum.
Petition III
Section 3.17 Voter approval required for approval of or effectiveness of a community redevelopment plan. A community redevelopment plan as defined in Florida Statutes Section 163 shall not be adopted by the City Commission until such proposed community redevelopment plan is submitted to a vote of the electors by referendum as provided by Florida Statutes Section 166.031 or by the City Charter. This amendment shall become effective immediately upon approval by a majority of the electors voting in such referendum.
Petition IV
Section 3.18 Voter approval required for increase in allowable height of structure. No amendment to the City's Land Development Code providing for an increase in the allowable height (as defined by the Land Development Code) of any structure (as defined by the Land Development Code) shall be adopted by the City Commission until such amendment is submitted to a vote of the electors by referendum as provided by Florida Statute S. 166.031 or by the City Charter. This amendment shall become effective immediately upon approval by majority of the electors voting in such referendum.

Discussion

Petition II
The City contends that the circuit court erred when it permitted Petition II to appear on the ballot. The proposed amendment requires a unanimous vote by the City Commission for matters affecting five or fewer parcels under the comprehensive land use plan. The City relies on section 163.3167(12), which provides:
An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.
The proposed charter amendment does not clash with chapter 163 because it would establish only an internal operating or procedural rule regarding the number of commissioners who must agree on an amendment affecting five or fewer parcels. We agree with the Citizens that the procedural requirement imposed by the proposed amendment does not qualify as a "referendum" proscribed by the statute. In other provisions, such as emergency ordinances in section 3.11(b), the City charter also requires a super-majority vote. Furthermore, we find no merit in the City's argument that the amendment is vague, ambiguous, *1149 or misleading. We affirm the cross-appeal.

Petitions I, III, and IV
Petitions I, III, and IV all require that certain measures be submitted to a general referendum before final adoption: the City's comprehensive land use plan or amendments thereto in Petition I; the City's community development code or amendments thereto in Petition III; and changes in building height restrictions in Petition IV.[2] The comprehensive land use plan and the community redevelopment code of local governments are addressed in parts II and III of chapter 163, in which the legislature enunciated a statewide growth and redevelopment policy. The statutes specify processes for the adoption and amendment of a comprehensive plan and a redevelopment code. For example, in part II, titled "Process for adoption of comprehensive plan or plan amendment," section 163.3184(13) states that the "proceedings under this section shall be the sole proceeding or action for a determination of whether a local government's plan, element, or amendment is in compliance with this act." Part III contains similar provisions. See, e.g., § 163.356 ("[A]ny county or municipality may create a public body corporate and politic to be known as a `community redevelopment agency.'"). The statutes also address public hearing and administrative review requirements.
In finding that chapter 163 preempted the proposed amendments in Petitions I, III, and IV, the circuit court recognized the general principle that "[p]reemption essentially takes a topic or field in which local government might otherwise establish local laws and reserves that topic for regulation exclusively by the legislature." City of Hollywood v. Mulligan, 934 So.2d 1238, 1243 (Fla. 2006) (quoting Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1018 (Fla. 2d DCA 2005)). The Citizens advance the contrary view: that the proposed amendments are neither inconsistent nor irreconcilable with the statutory framework and thus are constitutional. As authority, the Citizens cite this court's opinion in Hillsborough County v. Florida Restaurant Ass'n, 603 So.2d 587 (Fla. 2d DCA 1992), which held that a county ordinance requiring that establishments serving alcohol post signs warning of the dangers of drinking alcohol was neither expressly nor impliedly preempted by statutes relating to food protection or by Florida's interest in regulating alcohol packaging and sales. See also Phantom of Clearwater, 894 So.2d at 1020 (holding that a Pinellas County ordinance regulating the business of fireworks sales was, with one minor exception, lawfully enacted, because chapter 791 does not expressly or impliedly preempt the field of fireworks regulation). Similarly, in this case, the proposed City charter amendments and the statutory framework regulating the adoption and amendment of comprehensive land use plans and community redevelopment codes can co-exist.

Conclusion
We hold that the proposed amendments are neither facially unconstitutional nor unconstitutional in their entirety, not because they merely add another step in an already detailed process but because they are inferentially permitted by section 163.3167(12):

*1150 An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.
Clearly, the Legislature has proscribed use of the initiative and referendum process in matters affecting five or fewer parcels of land. And just as clearly, the Legislature inferentially permitted use of the initiative and referendum process in development orders or comprehensive plans or amendments affecting six or more parcels. This conclusion logically derives from a general principle of statutory construction, expressio unius est exclusio alterius, which means that "express mention of one thing is the exclusion of another." Inman v. State, 916 So.2d 59, 61 (Fla. 2d DCA 2005). Thus, because the law expressly describes the particular situation to which the prohibition against referenda applies (e.g., amendments affecting five or few parcels), the inference must be drawn that those situations not included by specific reference (e.g., amendments affecting six or more parcels) were intentionally omitted or excluded. See, e.g., Gay v. Singletary, 700 So.2d 1220 (Fla.1997).
Language from a recent Florida Supreme Court advisory opinion, albeit dicta, further bolsters our reasoning:

[T]he statutory scheme already in place allows local governments to utilize a referendum process in regard to a plan amendment if the amendment affects more than five parcels of land. See § 163.3167(12), Fla. Stat. (2004) ("An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited."). Thus, this initiative would mandate a process already approved by the Legislature in certain instances.
Advisory Op. to Att'y Gen. Re: Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 938 So.2d 501, 504 (Fla. 2006) (quoting, with emphasis, Advisory Op. to the Att'y Gen. re: Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 902 So.2d 763, 769 (Fla.2005)).[3] Rather than conflicting with the statutory framework, the proposed City charter amendments complement it: they are the flip side of the proverbial coin.
There should be no concern that such things as repeated refusals to approve a plan or amendment will thwart the statewide policy. Section 163.3167(2) authorizes the Administration Commission to impose sanctions on a local government that fails to timely submit a plan; and subsection (3) empowers the responsible regional planning agency to adopt any missing elements of a local government's plan. Generally, however, "it would be inappropriate for this court to undertake to discuss in any measure either the wisdom or the lack of wisdom reflected by the proposed amendment." Dade County League of Municipalities, 104 So.2d at 515; see also *1151 Gaines, 450 So.2d at 1178. But the citizens of the City of St. Pete Beach are entitled to express their views on how their City Commission should handle land use problems, despite a pervasive statutory framework implementing a statewide policy on growth and redevelopment.
Because placement of the proposed amendments on the ballot does not conflict with chapter 163, we affirm the judgment as to Petition II, reverse the judgment as to Petitions I, II, and IV, and remand with instructions for the circuit court to enter judgment in favor of the Citizens and to order the City to place all four of the proposed amendments on the ballot.
Affirmed in part, reversed in part, and remanded with instructions.
CASANUEVA, SALCINES, and CANADY, JJ., Concur.
NOTES
[1] The section designations refer to the City charter. The underlined portion is apparently the summary or title of the section.
[2] Although we do not address the wisdom of the proposed amendments, we note that Petitions III and IV appear to provide merely for an advisory opinion by the electorate, unlike Petition I, which requires that the electorate must approve the question before the City Commission may finally adopt the land use plan or any amendment to it.
[3] In its 2006 Land Use Plans opinion, the supreme court approved an issue for placement on the ballot that, if passed, will render our discussion moot. The relevant language of the proposed constitutional amendment is as follows:

Establishes that before a local government may adopt a new comprehensive land use plan, or amend a comprehensive land use plan, such proposed plan or plan amendment shall be subject to vote of the electors of the local government by referendum, following preparation by the local planning agency, consideration by the governing body as provided by general law, and notice thereof in a local newspaper of general circulation.
31 Fla. L. Weekly at S402.