PADOVANO, J.,
dissenting.
I respectfully dissent. The local option tourist development tax authorized by section 125.0104, Florida Statutes, is a tax on the amount of money a tourist pays to stay in a hotel in Florida. The portion of those funds earned by an online travel company, whether remitted by the hotel after payment of the bill or retained initially by the travel company at the time of the reservation, is subject to the tax. This conclusion is required not only by precedent we are bound to follow, but also by the plain language of the statute.
The holding by the majority that a portion of the total bill paid by the tourist is exempt from the local option tourist development tax is contrary to the decision by the Florida Supreme Court in Miami Dolphins, Ltd., v. Metropolitan Dade County, 394 So.2d 981 (Fla.1981). One of the questions presented in that case was whether the tax discriminated against tourists from other states. The supreme court answered the question in the negative and, as a part of its decision, the court defined the nature of the tax. As the court stated, the county ordinance implementing the local option tourist development tax imposed the tax on “the total rental charged every person who rents, leases or lets for consideration any living quarters ... for a term of six months or less.” Id. at 989. (emphasis added). The court observed that the tourist development tax is a tax imposed on all renters of the covered types of premises. Id. (emphasis added).
It is clear from the language of the Miami Dolphins opinion that the Florida Supreme Court considers the local option tourist development tax as a tax due on funds paid by the tourist, not a tax due on money received by the hotel. It is also clear from the language of the opinion that the tax is due on the gross amount of the hotel bill, not on the net amount the hotel may receive after payment of expenses or commissions to an online booking agent. Yet the majority of this court has concluded that the tax at issue is actually a tax on the business of renting a hotel room and the amount due is limited to the hotel’s portion of the total funds paid by the tourist to rent the room. On this point, I believe that the majority has misapplied the holding in Miami Dolphins.
I acknowledge that the issue before the court in Miami Dolphins is not the same as the issue we have before us here. If the matter were that simple we would have no controversy at all. The point is that the supreme court defined the nature of the tax by stating that it was a tax on money paid by the tourist, not as a tax on the money received by the hotel after payment of expenses. Curiously, the majority seems to concede this point in its statement that the Miami Dolphins decision “simply recognized the obvious — the tax is imposed on tourists and residents and collected by the hotels.” I think this statement regarding the nature of the tax is obvious, as well, but it is contrary to the rationale of the majority opinion.
The online travel companies rely heavily on the statement of legislative intent in section 125.0104, Florida Statutes, which is as follows:
(8)(a)l. It is declared to be the intent of the Legislature that every person who rents, leases, or lets for consideration *948 any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, condominium, or timeshare resort for a term of 6 months or less is exercising a privilege which is subject to taxation under this section, unless such person rents, leases, or lets for consideration any living quarters or accommodations which are exempt according to the provisions of chapter 212.
The travel companies contend that this section authorizes a tax on the exercise of the privilege of “renting, leasing or letting” rooms to transients.” (emphasis added). But that is not what the statute says. To the contrary, the statute merely identifies the act of renting, leasing and letting as the taxable event. It does not state that the tax is to be assessed on the rental income received by the hotel for the privilege of renting a room “to” a tourist as the travel companies argue. This section of the statute is written passively to define the transaction that is subject to the tax.
The travel companies argue that the statute must be construed to impose a tax on the business income received by the hotels, because the terms “rent” and “lease” are used to describe actions taken by the owner of the property, in this case the hotel. They point out in the answer brief that “rent” means “to grant the possession and enjoyment of property ... in return for payment,” that “lease” means “to grant the temporary possession or use of (lands, tenements, etc.) to another, usually for compensation at a fixed rate; let,” and that “let” means “to grant occupancy or use of (land, buildings, rooms, space, etc., or movable property)” in return for payment. Dictionary.com (based on Random House Dictionary) (2012); see also Collins English Dictionary (10th ed. 2009). The problem with this argument is that the terms “rent” and “lease” are also used to describe an action taken by the person who pays for the right to occupy the property.
The first definition of the transitive verb “rent” in the American Heritage Dictionary of the English Language online is “[t]o obtain occupancy or use of (another’s property) in return for regular payments.” AHDictionary.com. Indeed, the hard copy of the American Heritage Dictionary does not even include the meaning in which one grants the use of property to another. It lists only the meaning consonant with the primary online definition— “[t]o use (another’s property) in return for regular payments” — and “[t]o be for rent.” American Heritage Dictionary 708 (4th ed. 2001). Likewise, the MacMillan Dictionary online lists as the first definition of “rent” as “to pay money regularly to use a house, room, office, etc. that belongs to someone else.” MacMillanDiction-ary.com; see also Cambridge Dictionary Online, Dictionary.Cambridge.org/dictionary/american-english/. The Oxford Dictionaries U.S. English Usage site lists only the connotation, “pay someone for the use of (something, typically property, land, or a car): they rented a house together in Spain.” Oxford Dictionaries Online, Ox-fordDictionaries.com (emphasis in original). As Bryan Garner explains, the transitive verb “rent”
may refer to the action taken by either the lessor or the lessee; the word has had this doubleness of sense from at least the 16th century. Both the lessee and the lessor are renters, so to speak, though usually this term is reserved for tenants.
Bryan A. Garner, A Dictionary of Modem Legal Usage (2d ed.), p. 756 (emphasis in original).
Garner makes a similar observation as to the term “lease”: “To say that one leases property nowadays does not tell the reader or listener whether one is lessor or *949 lessee.” Id. at 514. Accordingly, dictionaries, including Black’s, generally list dual definitions of “lease.” See Black’s Law Dictionary, 909 (8th ed.); The American Heritage Dictionary of the English Language Online, AHDictionary.com; Merrianu-Webster Dictionary Online, Merriam-Webster.com/; Oxford Dictionaries Online, OxfordDictionaries.com. The definition in the Cambridge Dictionary Online lists the sense in which the lessee is the acting party as the first of the two alternate meanings. See Cambridge Dictionary Online, http://dictionary. cambridge.org/ (“to use or allow someone else to use land, property, etc. for an agreed period of time in exchange for money: I leased my new car instead of buying it.”) (emphasis in original).
Because these terms can be used interchangeably to describe the action by either party in the making of a lease or rental agreement, we cannot say for certain that they are used in the statute to describe the act of providing a hotel room for a price. We could just as well read the phrase “any person who rents ...” to mean any person who pays money to a hotel for the privilege of staying there. And while “let” has no other meaning than the one in which the property owner is the actor, this term is listed in the disjunctive in the statute. Therefore, it need not be understood as merely another term for “rent” or “lease.” Again, the statute merely defines the kind of transaction that is subject to the tax. It does not seek to assess the tax based on the activity of one of the parties to the transaction.
For these reasons, I do not think that the statement of legislative intent in section 125.0104 supports the argument by the travel companies that the tax is imposed for the privilege of operating a hotel in Florida. And even if that were the ease, the statement of legislative intent would not override the plain and unambiguous language of the operative parts of the statute — that is, the parts of the statute that describe how the tax is to be assessed and collected. See S.R.G. Corp. v. Dep’t of Revenue, 865 So.2d 687, 689 (Fla.1978) (stating that legislative intent is determined primarily from the language of the statute). Several key parts of the statute reveal that the tax is to be based on the total amount of money paid by the tourist, not on the net amount retained by the hotel.
For example, section 125.0104(3)(a)2.a states the “[t]ax shall be due on the consideration paid for occupancy.” Here, the legislature is plainly referring to the amount of money paid by the tourist, not the amount of money retained by the hotel. And if there could be any doubt that the tax is based on the gross amount paid by the tourist, it would be completely removed by section 125.0104(3)(c), which specifies that the tax shall be assessed “at a rate of 1 percent or 2 percent of each dollar and major fraction of each dollar of the total consideration charged for such lease or rental.” (Emphasis added.) This provision undercuts the argument that a portion of the consideration can be exempted from taxation. As the statute provides, the tax is to be levied on the full amount paid for the room.
I acknowledge that an ambiguity in a tax statute must be resolved in favor of the taxpayer, see Department of Revenue v. Brookwood Associates, Ltd., 324 So.2d 184, 186 (Fla. 1st DCA 1975); Maas Brothers, Inc. v. Dickinson, 195 So.2d 193, 198 (Fla.1967), but the statute at issue here does not strike me as ambiguous at all. It is broad in the sense that it covers many different kinds of tourist accommodations, and it is general in the sense that it refers without specification to both lessors and lessees. But it is not confusing or unclear. It imposes a tax on the funds paid by a *950 tourist to rent a room in a hotel. The matter is no more complicated than that. As a federal judge observed in ruling on the identical issue, the tax is imposed on the “bargain struck” and that is the money the tourist pays for access to the hotel room. See Village of Rosemont, III v. Priceline.com, Inc., 2011 WL 4913262 (N.D. Ill., 2011).
The majority is correct to say that section 125.0104, Florida Statutes must be read in conjunction with Chapter 212, the Florida Revenue Act of 1949. And the majority is also correct in pointing out that section 212.03(l)(a) specifies that the taxable privilege for the purpose of Chapter 212 is the business of operating a hotel. However, it does not follow from these two propositions that the taxable privilege for the purpose of section 125.0104 is the privilege of operating a hotel, as the majority concludes. Statutes are read in pari mate-ria only to resolve ambiguities and, as I have explained, there is no ambiguity in section 125.0104. Moreover, section 125.0104 was enacted after section 212.03(l)(a)(l), and the specific language in section 212.03(l)(a)(l) about the privilege of operating a hotel was not carried forward in section 125.0104. If we are to draw any conclusion from this omission at all, it would be that the taxable event for the purpose of section 125.0104 is not the privilege of operating a hotel.
It is significant in my view that the tourist development tax is paid on some transactions arranged by the online companies but not on others. The travel companies employ two different business models. Under the practice described as the “agency model,” the travel company books the room, the tourist pays the full amount of the bill to the hotel, and the hotel remits a fee to the travel company. By the practice described as the “merchant model,” the travel company books the room, collects the full amount of the hotel bill from the tourist, pays a portion of the bill to the hotel, and retains a portion of the bill for booking thé room.
When the travel company employs the agency model, the tax is computed and paid on the full amount of the bill for the room, and the fee that is remitted to the travel company is treated as an expense. In contrast, the tax is not computed on the full amount of the bill if the transaction is arranged under the merchant model. In that case, the tax is paid only on the portion of the funds paid by the tourist that are actually remitted to the hotel. The tax is not paid on that portion of the funds retained by the travel company.
Because the merchant model is merely a different method of completing the same transaction, it cannot have the effect of changing the tax liability on the transaction. When resolving a tax issue, the courts must look to the substance of the transaction, not its form or label. See Leon Co. Educ. Facilities Auth. v. Hartsfield, 698 So.2d 526, 529 (Fla.1997); Reinish v. Clark, 765 So.2d 197, 208 (Fla. 1st DCA 2000); TEDC/Shell City, Inc. v. Robbins, 690 So.2d 1323, 1325 (Fla. 3d DCA 1997). By this basic principle, a taxpayer cannot avoid a tax merely by characterizing a transaction as something other than what it truly is.
If the travel companies could escape the tax merely by changing the form of the transaction, the hotels could do the same thing on their own. There would be nothing to prevent a large hotel chain from setting up a wholly owned subsidiary and then using that company for the exclusive purpose of advertising and promotion and for booking hotel rooms. The subsidiary could then charge the hotel for a portion for the room rate for every booking it makes and retain its portion of the bill tax-free. In my view, a scheme like this is no worse than the one the travel companies *951 have devised here; nor is it any better. Both schemes seek to avoid taxation by making the transaction appear to be something other than what it is.
The issue presented in this case is just emerging in Florida, but it has been decided in other jurisdictions in a way that is contrary to the majority opinion. For example, in Expedia, Inc. v. City of Columbus, 285 Ga. 684, 681 S.E.2d 122 (2009), the Supreme Court of Georgia held that an online travel company using the merchant model must pay a local accommodation tax on the portion of the hotel bill it retains when booking the room. Because the statute at issue in that case imposed a tax on the “lodging charges actually collected” from the tourist, the court concluded that the “wholesale rate” the hotel charged the travel company could not be the rate upon which the tax was computed. Likewise in City of Charleston, S.C. v. Hotels.com, LP, 586 F.Supp.2d 538 (D.S.C.2008), a federal court held than an online travel company was required to pay the local accommodation tax on the portion of the hotel bill it retained for booking rooms in’ the City of Charleston. The statute in that case imposed a tax on the “gross proceeds” derived from the rental. The Florida statute is substantially the same in that it imposes a tax on “total consideration” for the lease or rental. And in Village of Rosemont, Ill. v. Priceline.com Inc., 2011 WL 4913262 (N.D.Ill., 2011), the court held that Price-line.com was obligated to pay a local accommodation tax on the amount it retained when it booked hotel rooms under the merchant model we have before the court in this case. Numerous other courts have concluded that requiring the online travel companies to pay a local accommodation tax on a hotel bill does not violate the dormant commerce clause. See Mayor & City Council of Baltimore v. Priceline.com Inc., 2012 WL 3043062 (D.Md., 2012); City of San Antonio v. Hotels.com, 2008 WL 2486043 (W.D.Tex.2008); Travelscape, LLC v. S. Carolina Dep’t of Revenue, 391 S.C. 89, 705 S.E.2d 28 (2011).
There are certainly differences in the wording of the statutes in these cases, but the fundamental principle is the same in all of them. The tax at issue is a tax on the total amount of money a tourist pays to stay in a hotel room. That amount cannot be artificially reduced by setting a wholesale rate for the room and then treating the difference on the funds retained by an online travel company as if it is not part of the money the tourist has paid to stay in the room. With respect for my colleagues in the majority, I think that the result should be no different here.
For these reasons, I would hold that the portion of the hotel bill that is retained by the online travel companies is part of the total consideration paid for the accommodation and that it is therefore subject to the local option tourist development tax.