448 So.2d 515 (1984)
METROPOLITAN DADE COUNTY, and Stephen L. Smith, Acting Tax Collector, City of Miami, and City of Miami Beach, Appellants,
v.
The GOLDEN NUGGET GROUP, a Florida Partnership, d/b/a Golden Nugget Beach Resort; Florida Resorts, Inc., a Florida Corporation, D/B/a Hawaiian Isle Beach Resort; S & M Lancaster Properties, Inc., a Florida Corporation, D/B/a Beach Harbor Hotel; Aztec Motel, Inc., a Florida Corporation; Bop, Inc., a Florida Corporation, D/B/a Desert Inn Motel; Castelita Investments, N.V., D/B/a Chateau by the Sea; Thunderbird Associates Ltd., a Limited Partnership, D/B/a Thunderbird Hotel; Blue Mist Corporation, a Florida Corporation D/B/a Blue Mist Motel; Pan American Hotel, Inc., a Florida Corporation, D/B/a Pan American Ocean Resort Hotel; the Suez Resort Motel; and Specialized Travel Systems, Inc., a Florida Corporation, Appellees.
No. 83-2799.
District Court of Appeal of Florida, Third District.
February 28, 1984.
Rehearing Denied April 17, 1984.
*517 Robert A. Ginsburg, County Atty., and Vicki J. Jay, Asst. County Atty. and Stuart L. Simon, Miami, as Bond Counsel for Dade County; Jose Garcia-Pedrosa, City Atty., and Robert N. Sechen and Gisella Cardonne, Asst. City Attys., Lucia Allen Dougherty and Christopher G. Korge, Miami, for appellants.
Floyd, Pearson, Steward, Richman, Greer, Weil & Zack, and Gerald Richman and Bruce A. Christensen, Miami, for appellees.
Before BARKDULL, NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
Defendants appeal a final order granting declaratory and injunctive relief against the levy and collection of taxes on the ground that the authorizing legislation, Act of July 19, 1983, Ch. 83-354, Laws of Florida 2355 [hereinafter "the Act"] and implementing Dade County Ordinance 83-91 [hereinafter "the Ordinance"], are invalid. Both parties ask us, additionally, to determine de novo the constitutionality of the two enactments, and seek an expedited disposition by this court.
The 1983 Legislature passed the Act into law as Senate Bill No. 9-C, creating Section 212.057, Florida Statutes (1983), which authorizes, inter alia, certain counties to levy a convention development tax on specified rentals or leases, and provides for the use of those tax revenues. Pursuant to the authority granted by this legislation, Dade County enacted the Ordinance which levies the tax and provides for the collection, distribution and application of the revenues.
Plaintiffs sought a determination that both the Act and the Ordinance were invalid and unconstitutional. The trial court found both enactments defective, but declined to pass directly on the question of their constitutionality.[1] As the first issue *518 on appeal, it is asserted that the Act and the Ordinance are not invalid. As a second issue, which was not addressed by the trial court, it is contended that both enactments are constitutional under the laws of Florida and the United States. We agree with appellants' contention that the Act is constitutional and valid, however, we affirm the trial court's determination that the tax collection section of the Ordinance is invalid.

I. VALIDITY OF TWO ENACTMENTS
The determined invalidity is based on a finding that the Act and Ordinance conflict with other provisions of Chapter 212, particularly Sections 212.18 and 212.20, Florida Statutes (1983). Section 212.18(2) provides:
(2) The department [of Revenue] shall administer and enforce the assessment and collection of the taxes, interest, and penalties imposed by this chapter. ... [e.s.]
Section 212.20(1) provides:
(1) The department [of Revenue] shall pay over to the Treasurer of the state all funds received and collected by it under the provisions of this Chapter, to be credited to the account of the General Revenue Fund of the state. [e.s.]
More specifically, the Act was declared defective because it contains no mechanism for collection, and by implication provides that the revenues collected will be segregated and actually paid to municipalities for certain convention center projects in contravention of Section 212.20. Further, the Ordinance was found to be in irreconcilable conflict with Section 212.18, since it purports to authorize collection of the tax by the County Tax Collector.
The newly enacted Section 212.057, Florida Statutes (1983), was expressly made a part of Chapter 212, a chapter entitled "Tax on Sales, Use, and Other Transactions." Chapter 212 details a comprehensive tax scheme providing for the administration, collection, records inspection, and enforcement by the Department of Revenue of all taxes imposed by the chapter. We disapprove of Attorney General Opinion No. 83-71, and the trial court's reliance upon it, which suggests that the Act is invalid because it does not contain a separate provision for administration, collection, enforcement, or disbursement of the tax revenues. Having enacted the Act as a part of Chapter 212, it was unnecessary for the legislature to republish those same extensive mechanisms.
The Act is consistent with Chapter 212. The tax is to be collected by the Department of Revenue as mandated by Section 212.18, and the funds paid over to the State Treasurer for deposit into the General Revenue Fund of the state pursuant to Section 212.20. We cannot find from the face of the Act that the legislature intended other than that these taxes be returned to the counties, less administrative costs, by future appropriation measures *519 as contemplated by Section 215.32(2)(a).[2] We conclude that the Act is not defective.
To the extent that Section 29-61 of the Ordinance authorizes collection of the tax by the Dade County Tax Collector, it is invalid as in conflict with Chapter 212. Appellants' fall-back argument  that the authority to collect the tax is inherent in the grant of authority to levy in the first instance  is untenable. A levy is a limited legislative function which declares the subject and rate of taxation; it does not comprehend the entire process by which taxes are imposed. Atlantic Coast Line R. Co. v. Amos, 94 Fla. 588, 605, 115 So. 315, 320 (1927).

II. CONSTITUTIONALITY OF TWO ENACTMENTS
Appellees argue that the Act and Ordinance violate several provisions of the Florida and federal constitutions. Specifically, appellees maintain the Act is unconstitutional (a) as a special or local act which lacks referendum and notice provisions and concerns a prohibited subject, (b) as a violation of equal protection guarantees, (c) as a violation of due process requirements, and (d) as a violation of uniform taxation provisions. They further contend that (e) the Ordinance is unconstitutional. We undertake the examination of the Act, as we must, with the presumption of validity which favors every legislative enactment. Shelton v. Reeder, 121 So.2d 145 (Fla. 1960).

A. The act is not unconstitutional as a special or local act which lacks referendum and notice provisions and concerns a prohibited subject.

Appellees first contend that the Act is unconstitutional as a special or local act, or as a general law of local application. If a special or local law, the Act violates Article III, Section 10 of the Florida Constitution, since it lacks notice and referendum provisions. Further, if the Act is either a special or local law, or a general law of local application, appellees claim that it concerns a prohibited subject  the assessment of taxes  in contravention of Article III, Section 11(a)(2).
The constitution does not define a special or general law, however, several early Florida cases have undertaken to do so. In Carter v. Norman, 38 So.2d 30 (Fla. 1948), the Florida Supreme Court defined a general law as "[a] statute relating to subdivisions of the state or to subjects, persons or things of a class, based upon proper distinctions and differences that inhere in or are peculiar or appropriate to the class... ." Id. at 32.[3] A general law may contain classifications, and the legislature has wide discretion in making such classifications, so long as they are reasonable.
*520 A general law containing a classification scheme is reasonable and not arbitrary if there is a reasonable relation between the classification and the purpose of the legislation. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983). In Sanford-Orlando, a statute had been enacted which permitted the conversion of any harness racing track to dog racing if that track fell into a certain category. That category was based on the amount of income or "handle" received over a period of years. The thrust of the legislation was to allow conversion if the track was "financially ailing." A new statute was created which amended the former one, broadening it for the specific purpose of allowing Seminole Park and Fairgrounds and Seminole Greyhound Park to convert from harness racing to dog racing. Both the trial court and the district court of appeal had found the latter statute unconstitutional as a special law or general law of local application enacted in violation of Article III, Sections 10, 11(a), 12, and 20 of the Florida Constitution. The Florida Supreme Court reversed.
In addition to reiterating the definition of general law set out in Carter v. Norman, supra, the court noted that "a general law does not lose its general law status so long as it operates uniformly upon subjects as they may exist in the state, applies uniformly within permissible classifications, operates universally throughout the state or so long as it relates to a state function or instrumentality." 434 So.2d at 881. The court found that in light of the state interest  increased state revenues  the classification of financially ailing racing facilities was reasonably related to the subject matter. It was deemed insignificant that Seminole was the only track to benefit from the law, since the class had the potential of applying to other tracks.
In the instant case, appellants suggest that a rational relationship exists between the classification and purpose of the Act  to facilitate the construction and improvement of facilities such as convention centers for the purpose of promoting tourism. Appellants claim that the three counties potentially eligible for the tax have the following characteristics in common: (1) they are all in the southern half of Florida; (2) they are all riparian; (3) they all have extensive airport and/or seaport facilities; (4) they each have substantial tourist-oriented economies. We choose not to comment on the importance of the first three characteristics. Appellants, astutely, rely most heavily on the fourth characteristic, noting that during the last two decades these counties in particular have developed or plan to develop facilities that will attract a growing number of convention tourists, for the good of an ailing tourist industry. This is clearly a reasonable classification, cf. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983) (classification of "financially ailing" harness tracks reasonable), which bears a substantial relationship to the Act's purpose as stated above. When a classification is made by the Legislature in the enactment of general laws, the presumption is in favor of the classification's reasonableness, so that:
[I]f any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts. The deference due to the legislative judgment in the matter will be observed in all cases where the court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made. Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla. 1977).
The classification in the instant case satisfies the criteria for a general law.
The Act could fairly be labelled a `general law of local application,' or "a law that uses a classification scheme  based on population or some other criterion  so that its application is restricted to particular localities." City of Miami Beach v. Frankel, 363 So.2d 555, 558 (Fla. 1978). *521 Appellee argues that under Article III, Section 11 of Florida's Constitution, neither a special law nor a general law of local application may relate to the assessment of taxes. This prohibition, however, has been interpreted to proscribe only local enactments bearing upon the mechanics of tax assessment and collection; it does not prohibit special acts or general acts of local application that empower a local government to levy or impose a tax. Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65 (Fla. 1962); McMullen v. Pinellas County, 90 Fla. 398, 106 So. 73 (1925).

B. The act is not unconstitutional as a violation of equal protection guarantees.

Appellees next claim that the Act impermissibly classifies persons on the basis of the duration and type of residence in the county, thus violating equal protection. A similar argument was rejected in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981). Miami Dolphins involved a challenge to Section 125.0104, Florida Statutes (1981), a Local Option Tourist Development Act. That statute, employing almost identical language to that which is challenged here, permitted all counties to adopt a "tourist room tax at the rate of two percent on hotel, motel, and similar accommodations rented for a term of six months or less". Id. at 983. In rejecting the contention that this statute violated equal protection, the Florida Supreme Court held that the tax does not discriminate between residents and non-residents, as it is imposed on anyone who rents specific kinds of living space for a term of six months or less. Further, the various classifications and exemptions were found to be rationally connected to a legitimate state interest, and not arbitrary. Taxes on transient rental housing as are found in Chapter 212 (which is incorporated into § 125.0104 by reference), the court observed, have been part of Florida law for many years and have withstood several court tests. See, e.g., Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950) (discussed infra).
Additionally, appellees contend that the Act violates equal protection because there is no rational basis for the distinction drawn between counties which fall into the limitation and those that do not. But the actual test for determining whether a statutory classification comports with equal protection is "whether the difference between those included in a class and those excluded from it bears a substantial relationship to the legislative purpose... ." Lasky v. State Farm Insurance Co., 296 So.2d 9, 18 (Fla. 1974). We think the same substantial relationship between the classification and the Act's purpose identified in our discussion of the Act as a general law satisfies the requirements of the equal protection clause.

C. The act is not unconstitutional as a violation of Due Process requirements.

Appellees further contend that the Act is unconstitutionally vague. The tax herein is imposed on the rental, lease or use of certain accommodations "for a period of thirty days or less." Appellees claim that the phrase "period of thirty days or less" is not defined in the Act, and that the phrase is ambiguous. Appellees by example suggest that the Act is susceptible to tax-avoidance interpretations, which, we think, is far less than what is required for a showing of constitutional vagueness. If that were the test, many tax laws would wither under assault. It appears the Act is sufficiently definite to apprise those to whom it applies what is required of them. Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).

D. The act is not unconstitutional as a violation of uniform taxation protections.

Article VII, Section 2 of the Florida Constitution provides that all ad valorem taxes shall be at a uniform rate within each taxing unit. Appellants maintain that the tax is not an ad valorem tax, since it is not based upon the assessed value of property. § 192.001(1), Fla. Stat. (1983). Instead, they contend, correctly, that the tax *522 is an excise or sales tax based on the use of certain property, consistent with Chapter 212, which is entitled "Tax On Sales, Use and Other Transactions."
In Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950), a similar tax was placed on the "privilege" of renting, leasing, or letting certain accommodations. A tax on the exercise of such privilege was three percent. The Florida Supreme Court upheld the tax against a constitutional challenge, finding that this tax was not a property tax within the meaning of the constitution, but was more like an excise or occupation tax. The Florida Supreme Court has more recently had occasion to delineate the difference between ad valorem and excise taxes. In Rutledge v. Chandler, 445 So.2d 1007 (Fla. 1984), the court reaffirmed the test articulated in City of DeLand v. Florida Public Service Company, 119 Fla. 804, 813, 161 So. 735, 738 (1935), which disposes of the issue as presented here:
An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted for laying them and fixing their amounts. If a tax is imposed directly by the Legislature without assessment, and its sum is measured by the amount of business done, income previously received, or by the extent to which a taxable privilege may have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of such taxpayer's assets or his investments in business, it is to be regarded as an excise tax. But if the tax is computed upon the valuation of the property, and assessed by assessors, either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax. 445 So.2d at 1008.
Further, the tax authorized by the Act is uniform throughout the area in which it is levied. In other words, everywhere the tax is levied, it is levied at the same rate, which satisfies the constitutional requirements for uniformity. See Gallant v. Stephens, 358 So.2d 536 (Fla. 1978); Tucker v. Underdown, 356 So.2d 251 (Fla. 1978).

E. The Constitutionality of the local ordinance need not be ruled upon.

We discern no specific challenge to the constitutionality of the local ordinance other than (1) the Act which authorizes the county to levy the tax is itself unconstitutional, (2) collection of the tax by the county is not authorized by the Act. In light of our holding that the Act is constitutional and that the collection provision in the Ordinance is invalid because authority to collect the tax is not statutorily granted, we need not consider for the purpose of constitutionality, other sections of the Ordinance. The section declared invalid herein is severable. Our opinion anticipates legislative enactment of appropriation and transfer measures to carry out legislative intent, the present absence of which in no way affects the otherwise valid sections of the Ordinance.
Affirmed in part and reversed in part.

ON MOTION FOR REHEARING
PER CURIAM.
The opinion of February 28, 1984, is supplemented as follows for purpose of clarification: The funds collected by Dade County pursuant to the Act and Ordinance, which are now being held in escrow, along with all accrued interest, are to be paid over to the State Department of Revenue. Otherwise, the motion for rehearing is denied.
NOTES
[1] The findings of fact, as set forth in the final judgment are:

FINDINGS
1. This Court has jurisdiction of these parties and over this cause as an action for declaratory relief under Chapter 86 of the Florida Statutes and for injunctive and other relief.
2. The Florida Legislature in July of 1983 enacted Chapter 83-354, Laws of Florida ("the Convention Development Tax", hereinafter "the Tax" or the "Tax Act"). Subsequently, in October, 1983, the Commission of Dade County passed Ordinance 83-91 that purported to authorize the County Tax Collector to collect this Tax from hotels and motels, apartment house owners, apartment hotel and resort motel owners, rooming house owners, tourist or trailer camp owners and condominium owners. Being charged is an additional 3% tax from persons renting, leasing and using these living quarters or accommodations for a period of thirty days or less.
3. Plaintiffs are ten owners of hotels and motels in the unincorporated "Sunny Isles" area of Dade County, Florida, and a tour operator in that area. Defendants are Metropolitan Dade County and Stephen L. Smith, its Acting Tax Collector.
4. No referendum has been held on the Statute and no notice of intention to enact the Statute was given.
5. The Tax Act specifically applies only to counties as defined by Sec. 125.011(1) of the Florida Statutes. That Statute in turn limits the definition to counties which have adopted home rule under 3 subsections of the 1885 Florida Constitution, as preserved by the 1968 Constitution. Each of the 3 subsections applies to a different Florida county: Dade, Hillsborough and Monroe. Only Dade County has adopted such a "home rule" charter  so in the entire state, only Dade County has the right to adopt the 3% tax, under the Tax Act.
6. The parties have stipulated that Plaintiffs would have testified that because of the imposition of the Tax, they are faced with loss of business in amounts not specifically calculable. Their primary competition comes from Broward County to the immediate North, which has not been authorized to impose the Tax, and from the municipalities of Surfside and Bal Harbour to the immediate South, both of which municipalities have "opted out" of the Tax, an option prohibited to Plaintiffs. Without elaboration, it was stipulated that Plaintiffs would testify as to irreparable injury resulting from the imposition of the Tax. The Court finds that such irreparable injury has been demonstrated.
7. Plaintiffs have demonstrated they are without adequate remedy at law... .
[2] Chapter 215 governs the handing of all revenues paid into the State Treasury. Section 215.32, applicable here, provides:

(1) All moneys received by the state shall be deposited in the State Treasury unless specifically provided otherwise by law and shall be deposited in and accounted for by the Treasurer and the Department of Banking and Finance within the following funds, which funds are hereby created and established:
(a) General Revenue Fund;
(b) Trust Funds; and
(c) Working Capital Fund.
(2) The source and use of each of these funds shall be as follows:
(a) The General Revenue Fund shall consist of all moneys received by the state from every source whatsoever... . Such moneys shall be expended pursuant to General Revenue Fund appropriations acts. ... [e.s.]
We must reject the alternative construction urged by the county, that the funds may be transferred from the General Revenue Fund into a trust fund under Section 215.32(1)(b). We agree with the finding of the trial court that no such trust fund was created or contemplated. Further, no statutory mechanism exists to effect a transfer from the General Revenue Fund to a State Trust Fund to the local authorities. Cf. § 125.0104, Fla. Stat. (1981), discussed in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981).
[3] Special and local laws were distinguished: "A statute relating to particular subdivisions or portions of the state, or to particular places of a classified locality is a local law. A statute relating to particular persons or things or other particular subjects of class is a special law." Id.