464 So.2d 535 (1985)
GOLDEN NUGGET GROUP, et al., Petitioners,
v.
METROPOLITAN DADE COUNTY, et al., Respondents.
No. 65324.
Supreme Court of Florida.
February 8, 1985.
Gerald F. Richman and Bruce A. Christensen of Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh, Miami, for petitioners.
Robert A. Ginsburg, County Atty., and Vicki J. Jay, Asst. County Atty., and Stuart L. Simon of Fine, Jacobson, Block, England, Klein, Colan & Simon, Miami, Special Counsel for Metropolitan Dade County, Lucia A. Dougherty, City Atty., and Robert N. Sechen and Gisela Cardonne, Asst. City Attys., Miami, for City of Miami, and M. Louise Barrett, City Atty., and Christopher G. Korge, Asst. City Atty., and Sandra W. Schneider, Miami Beach, Special Counsel for City of Miami Beach, for respondents.
OVERTON, Justice.
This cause is before us on petition to review Metropolitan Dade County v. Golden Nugget Group, 448 So.2d 515 (Fla. 3d DCA 1984), in which the district court of appeal declared valid section 212.057, Florida Statutes (1983), which authorizes certain counties to implement a "bed tax" on shortterm rentals, and held invalid the portion of a Dade County ordinance enacted pursuant to the statute providing for the collection of its tax revenues. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and we approve the decision of the district court.
The legislature, by chapter 83-354, Laws of Florida, enacted section 212.057,[*] which *536 empowers "[e]ach county, as defined in s. 125.011(1)" to levy a three percent convention development tax on payments made to rent, lease or use any living quarters or accommodations. Section 212.057 provides that the tax revenues must be used to improve the largest existing publicly-owned convention center in the county and to construct a convention center in the county's most populous municipality. Counties authorized to levy the tax are those counties which operate "under a home rule charter adopted pursuant to ss. 10, 11 and 24 of Art. VIII of the Constitution of 1885, as preserved by Art. VIII, s. 6(e) of the Constitution of 1968." See § 125.011(1), Fla. Stat. (1983). Dade, Hillsborough, and Monroe Counties potentially meet this definition, but only Dade County has adopted a home-rule charter.
Pursuant to section 212.057, Dade County enacted ordinance 83-91, which implements the tax and provides for the collection, distribution, and application of the revenues. Petitioners, each of whom owns a hotel or motel or operates tours in Dade County, sought a determination that the statute and ordinance were invalid and unconstitutional. The trial court entered an order enjoining the respondents from assessing the tax. Citing Florida Attorney General Opinion 83-71, the trial court declared the statute defective on the grounds that it includes no mechanism for tax collection and by implication provides that the revenues collected will be segregated and paid to municipalities in contravention of section 212.20, Florida Statutes (1983). Further, the trial court found the ordinance to be in irreconcilable conflict with section 212.18, Florida Statutes (1983), because it purports to authorize collection of the tax by the Dade County tax collector.
On appeal, the district court affirmed in part and reversed in part. While *537 agreeing with the trial court that the tax collection portion of the ordinance was invalid, the district court held that section 212.057 and the remainder of the ordinance are valid and constitutional. The district court found that because the statute was expressly made a part of chapter 212, which includes a comprehensive scheme for the collection, administration, and enforcement of all taxes imposed by the chapter, the legislature was not required to publish independent collection mechanisms. The district court concluded that, pursuant to chapter 212, the tax must be collected by the Department of Revenue and paid to the state treasurer for deposit into the general revenue fund as mandated by sections 212.18 and 212.20, Florida Statutes (1983). The revenues must then be returned to the counties by future appropriation measures contemplated by section 215.32, Florida Statutes (1983), which governs the handling of all revenues paid to the state treasurer. On rehearing, the district court directed that the funds collected pursuant to the ordinance be paid to the Department of Revenue.
The district court further rejected the petitioners' assertions that the statute concerns a prohibited subject and violates equal protection guarantees, due process requirements, and uniform taxation provisions, noting that this Court upheld against constitutional attack a statute employing almost identical language in Miami Dolphins, Ltd. v. Metropolitan Dade County, 394 So.2d 981 (Fla. 1981). In upholding the statute's constitutionality, the district court also refused to accept the petitioners' argument that section 212.057 is a special law or general law of local application implemented without notice or referendum, finding that the statute satisfies the criteria for a general law enunciated by this Court in Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983). The district court pointed out that the three counties potentially eligible to implement the tax have substantial tourist-oriented economies, and they have concentrated on developing facilities that will attract convention tourists in order to improve their tourist industries. Noting that "[w]hen a classification is made by the Legislature in the enactment of general laws, the presumption is in favor of the classification's reasonableness," the district court quoted a portion of this Court's decision in Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla. 1977):
[I]f any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts. The deference due to the legislative judgment in the matter will be observed in all cases where the court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made.
448 So.2d at 520. The district court concluded that the classification utilized in the statute is reasonable, and that it bears a substantial relationship to the statute's purpose  to promote tourism by facilitating the improvement and construction of convention centers.
We fully approve the decision of the district court. The issues asserted by petitioners with respect to the constitutionality of the statute have been previously resolved by this Court. See Sanford Orlando Kennel Club; Miami Dolphins. Further, while this case was pending in this Court, the legislature corrected any ambiguity with respect to the collection and distribution of section 212.057 revenues when it amended the statute to expressly include collection and distribution procedures for revenues collected both prior and subsequent to the effective date of the amendment. See ch. 84-67, Laws of Fla.; § 212.057, Fla. Stat. (Supp. 1984).
For the reasons expressed, the decision of the district court is approved.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] Section 212.057, as created by chapter 83-354, provides:

212.057 Convention development tax; adoption; application of revenues; administration and collection. 
(1) Each county, as defined in s. 125.011(1), may levy, pursuant to an ordinance enacted by the governing body of the county, a 3 percent convention development tax on the amount of any payment made by any person to rent, lease, or use for a period of 30 days or less any living quarters or accommodations in a hotel, apartment hotel, motel, resort motel, apartment, apartment motel, rooming house, tourist or trailer camp, or condominium.
(2) All tax revenues and any interest accrued thereon received pursuant to this section shall be used as follows:
(a) Two-thirds of the proceeds shall be used to extend, enlarge, and improve the largest existing publicly-owned convention center in the county;
(b) One-third of the proceeds shall be used to construct a new multi-purpose convention/coliseum/exhibition center or the maximum components thereof as funds permit in the most populous municipality in the county; and
(c) After the completion of any project under paragraph (a) or (b), tax revenues and interest accrued may be used to acquire, construct, extend, enlarge, remodel, repair, improve or maintain one or more convention centers, stadiums, exhibition halls, arenas, coliseums, or auditoriums.
(d) For the purposes of completion of any project pursuant to this section, tax revenues and interest accrued may be used:
1. As collateral, pledged or hypothecated, for projects authorized by this section, including bonds issued in connection therewith; or
2. As a pledge or capital contribution in conjunction with a partnership, joint venture, or other business arrangement between a municipality and one or more business entities for projects authorized by this section.
(3) The governing body of each municipality in a county in which a municipal tourist tax is levied may adopt a resolution prohibiting the levy of the convention development tax within such municipality. If the governing body adopts such a resolution, the convention tax shall be levied by the county in all other areas of the county except such municipality[;] provided, no funds collected pursuant to this act may be expended in a municipality which has adopted such a resolution.
(4) Before the county enacts an ordinance levying and imposing the tax, the county shall notify the governing body of each municipality in which projects are to be developed pursuant to paragraphs (2)(a) or (b). The governing bodies of such municipalities shall designate or appoint an authority to administer and disburse such proceeds and any other related source of the revenue. The members of each such authority shall be selected from the tourism and hospitality industry that does business within such municipality and shall serve at the pleasure of the governing body of such municipality. The annual budget of such authority shall be subject to approval of the governing body of the municipality.