## Paustian v. The Pennsylvania Convention Center Authority

*Sharon K. Wallis,* for plaintiff.
*Richard J. Gold,* for the City of Philadlephia.
*Barbara Mather,* for other defendants.

PRATTIS, *J.,* GAFNI, *J.,* SHEPPARD, Jr., *J.*

SHEPPARD, *J.,* July 19, 1988 —

## FINDINGS OF FACT

(1) On June 27, 1986, the General Assembly of Pennsylvania enacted the Convention Center Authority Act, 53 P.S. §16201 et seq. The act created the Pennsylvania Convention Center Authority to oversee the construction of a Convention Center and to operate it upon its completion.

(2) The act authorized the council of cities of the first class "to impose an exise tax on the consideration received by each operator of a hotel within the city from each transaction of renting a room or rooms to accommodate transients." 53 P.S. §16223(b). The tax is to be collected by the hotel operator from the patron of the room and paid over to the city.

(3) Presently, Philadelphia is the only city of the first class in Pennsylvania.

(4) Pursuant to the act, Philadelphia's City Council enacted a Hotel Room Rental Tax on October 22, 1986. Philadelphia §19-2401 et seq. Prior to the

passage of the tax, Philadelphia was imposing a three-percent tax on hotel room rentals to support the Philadelphia Convention and Visitors Bureau. The tax increased the pertinent hotel room rental tax to five and later six percent and dedicated the increase to convention center purposes.

(5) The tax applies only to hotels located in Philadelphia.

(6) The new convention center will be located in center city Philadelphia with a projected opening date in 1992.

(7) Plaintiffs represent two classes of persons who pay the tax, as described with particularity in finding of fact no. 8, *infra,* and in paragraphs 5 through 21 of plaintiffs' complaint.

(8) On June 8, 1988, pursuant to a stipulation of counsel for the parties, this court ordered that the present action shall proceed as a class action pursuant to rule 1701, et seq., of the Pennsylvania Rules of Civil Procedure, on behalf of the following classes:

(a) Plaintiffs John Fund, Richard Broglino and Stuart Kessler shall be certified as representative of the members of class A, which shall consist of:

"All non-residents of Pennsylvania who have, or in the future will, stay overnight in a hotel room subject to the Philadelphia Hotel Room Rental Tax, in the course of their interstate travel and/or participation in interstate commerce, between November 1, 1986 and the date the proposed new convention center becomes operational, or the date the portion of the said tax dedicated to the Pennsylvania Convention Center Authority for convention center purposes is eliminated, whichever is sooner."

(b) Plaintiffs Linda Paustian and John Famularo shall be certified as representatives of class B, which shall consist of:

"All natural persons and entities, including Penn-

sylvania residents, who, in the course of their participation in interstate commerce, have, or in future will, pay or reimburse the expenses of lodging a non-resident of Pennsylvania at a hotel subject to the Philadelphia Hotel Room Rental Tax between November 1, 1986 and the date the proposed convention center becomes operational, or the date the portion of the said tax dedicated to the Pennsylvania Convention Center Authority for convention center purposes is eliminated, whichever is sooner."

(9) The named defendants and their legal status are as set forth in paragraphs 2 through 4 of plaintiffs' complaint.

(10) The background pertinent to, and the development of the convention center proposal and the creation of the Pennsylvania Convention Center Authority are described in detail in paragraphs 36 through 52 of plaintiffs' complaint.

(11) Philadelphia is a uniquely well-suited location for the construction of a major convention center. Development of a major convention center is more appropriate in a city of the first class which, because of its size, is capable of attracting major national conventions. 53 P.S. §16202(3).

(12) The attraction of business to this commonwealth as a result of the development of a major convention center is an important factor in the continual encouragement, promotion, attraction, stimulation, development, growth and expansion of business, industry, commerce and tourism within Philadelphia, the surrounding counties and this commonwealth as a whole. 53 P.S. §16202(3).

(13) The development of the convention center will provide benefits: (1) to the hotel industry throughout the entire area of such city where such a center is developed, (2) to the restaurant and entertainment industries throughout the entire area

of such city where such a center is located, (3) to all other businesses and individuals benefitted by the attraction of major conventions and tourists, (4) to other individual businesses whose livelihood is dependent thereon, and, (5) to the general public. 53 P.S. §§16202(5) and 16202(6).

(14) The need for a convention center and the promotion of it, which will provide significant benefits to the general public, will require the expenditure of public money and it is appropriate to authorize such city to impose and collect a tax applicable within the entire territorial limits of such city, to facilitate the development of a convention facility and the promotion of tourism within such city. 53 P.S. §16202(7).

(15) The health, safety and general welfare of the people of this commonwealth are directly dependent upon the continual encouragement, development, growth and expansion of business, industry, commerce and tourism within this commonwealth. 53 P.S. §16202(2).

(16) The tax is two percent of the amount paid for renting a hotel room in Philadelphia. Prior to the passage of the tax, Philadelphia imposed a three-percent tax on hotel room rentals to support the Philadelphia Convention and Visitors Bureau. The tax increased the pertinent hotel room rental tax to five percent and authorizes a subsequent increase to six percent, when the convention center is substantially completed. 53 P.S. §16223(c)(3).

(17) The tax is paid by anyone who rents a Philadelphia hotel room for less than 30 consecutive days; conversely, anyone who rents a Philadelphia hotel room for 30 days or more consecutive days irrespective of his/her domicile does not have to pay the tax. Philadelphia Code §§19-2401(5),(9).

(18) Plaintiffs do not challenge that portion of the hotel room rental tax (presently, three-percent tax

on hotel room rentals) which supports the Philadelphia Convention and Visitors Bureau.

(19) Plaintiffs do not challenge the existing tax after the convention center is constructed and in operation.

(20) At the June 15, 1988 oral argument, plaintiffs conceded that if the tax were collected for the general fund of the city, they would have no basis to challenge the tax.

(21) At the June 15, 1988 oral argument, defendants moved to amend their motion to include a motion for judgment on the pleadings pursuant to Pa.R.C.P. 1034(a).

## DISCUSSION

Plaintiffs request the court to enter a declaratory judgment that that portion of the tax which supports the proposed convention center (and its enabling legislation, the act) are unconstitutional as applied to the members of class A and class B, pending completion and operation of the proposed convention center. Plaintiffs seek declaratory relief because:

"Pending commencement of operation of the Reading Convention Center, non-residents of Pennsylvania who rent overnight accommodations in Philadelphia hotels will be taxed to support the planning and construction of the convention center without realizing any benefit from the existence of said convention center.".

Plaintiffs urge that the tax and the act violate the due process, the equal protection, and the interstate commerce clauses of the U.S. Constitution, and impose an improper burden on citizens' right to travel.

It is significant to note that plaintiffs do not challenge the existing three percent Hotel Room Rental Tax which supports the Convention and Visitors Bureau. Moreover, plaintiffs do not chal-

lenge the existing tax *after* the convention center is contructed and operating. Further, at argument, plaintiffs' counsel conceded that all of plaintiffs' objections to the efficacy of the convention center and the tax would be moot if the tax went into the general funds of the city. We are left, then, with a very small class objecting to payment of a portion of a tax for a limited period of time.

This court holds that the tax and its enabling act are constitutional under the U.S. and Pennsylvania Constititions, relying on *Leventhal v. City of Philadelphia,* 517 Pa. 324, 536 A.2d 339 (1988). Moreover, the tax does not violate the commerce clause of the U.S. Constitution because it is applied equally to individuals traveling in interstate commerce and to those who are not. Finally, the tax does not improperly interfere with the right to travel, because it is imposed equally upon resident and non-resident hotel guests and its purpose is to promote, rather than to impede, travel.

### *Judgment on the Pleadings May Properly Be Entered*

This matter is properly before the court on defendants' motion for judgment on the pleadings.[1] A motion for judgment on the pleadings is seasonable "after the pleadings are closed, but within such time as not to delay trial." Pa.R.C.P. 1034(a). Although Pa.R.C.P. 1034 does not state specifically what is to be raised, a failure to state a claim upon which relief can be granted is appropriate. Goodrich-Amram 2d, §1034(a):2. A motion for judgment on the pleadings is to be granted when the court is presented with a

---

1. At oral argument on June 15, 1988, counsel for defendants amended their motion for summary judgment to make certain that defendants sought, in the alternative, judgment on the pleadings.

clear case in which all issues of fact are resolved. *Coal Operators Casualty Co. v. Charles T. Easterby & Co.*, 440 Pa. 218, 269 A.2d 671 (1970). The court's consideration of a motion for a judgment on the pleadings is inherently limited to the well-pleaded facts, admissions, and documents properly attached to the pleadings. *Balush v. Borough of Norristown,* 292 Pa. Super. 416, 437 A.2d 453 (1981).

Here, plaintiffs' complaint describes in detail:

(a) the legal status of the parties,

(b) the descriptions of the classes,[2]

(c) the development of the convention center proposal and the creation of the authority,

(d) the enactment and application of the tax, and

(e) the operation of the authority.

Defendents do not, in essence, contradict any of the pertinent, well-pleaded facts, nor apparently could they. Defendants do, however, deny those paragraphs which do not, in legal intendment, embody factual averments but rather present legal arguments or conclusions relative to the ultimate issues in the case.

Upon consideration of plaintiffs' complaint and defendants' answer, this court is satisified that the issues presented constitute legal questions which may be presently answered in the context of judgment on the pleadings.

### The Tax and the Act Do Not Violate the Due Process and the Equal Protection Clauses of the U.S. Constitution

These very constitutional issues were the focus of, and were answered by, the Pennsylvania Supreme Court's opinion in *Leventhal v. City of Phil-*

---

2. This court, on June 8, 1988, certified the described classes pursuant to the stipulation of the parties.

*adelphia,* 517 Pa. 324, 536 A.2d 339 (1988). In *Leventhal,* the Supreme Court held:

"The principles which govern analysis of the claims asserted here are well established. First, and foremost, is a presumption that tax enactments are constitutionally valid and the burden of proving invalidity is upon the person challenging the tax. (citations omitted) *Monzo* at 36, 500 A.2d at 1101. The legislature, in the exercise of its taxing power, is subject to the requirements of the equal protection and uniformity clauses. *Alco Parking Corp. v. City of Pittsburgh,* 453 Pa. 245, 307 A.2d 851, rev'd on other grounds, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974). However, the legislature possesses wide discretion in matters of taxation. *Aldine Apartments v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981).

"So far as the reasonableness of classifications made for the purposes of taxation is concerned, the uniformity clause of the Constitution of Pennsylvania and the equal protection clause of the Constitution of the United States stand in pari materia. *Commonwealth v. Life Assurance Co. of Pa.,* 419 Pa. 370, 214 A.2d 209 (1965). Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation 'upon the same class of subjects' (Pa. Const. Article VIII, section 1) mandate that classification in a taxing scheme have a rational basis. In either case, a classification for tax purposes is valid when it 'is based upon some legitimate distinction between the classes that provides a non-arbitrary and "reasonable and just" basis for the different treatment.' *Leonard v. Thornburg,* 507 Pa. 317, 321, 489 A.2d 1349, 1350 (1985), quoting *Aldine Apartments v. Commonwealth, supra.* Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal

tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Commonwealth v. Staley,* 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978). The controlling standard for determining whether a tax is violative of the due process clause of the Fourteenth Amendment is '[w]hether the taxing power exerted by the state bears a fiscal relation to protection, opportunities and benefits given by the state. The simple question is whether the state has given anything for which it can ask a return.' " *Leventhal, supra.*

The test implicated by these principles is met in this case. "The only benefit to which a taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Airway Arms Inc. v. Moon Area School District,* 498 Pa. 286, 304, 446 A.2d 234, 244 (1982).

Furthermore, plaintiffs' attempt, at the June 15, 1988 hearing, to avail themselves of the argument that the tax is violative of the special laws provision of the Pennsylvania Constitution[3] must similarly fail. *Leventhal* holds:

"Finally, also in constrast to *Monzo,* the act here does not violate the special law clause of the Pennsylvania Constitution, Article 3, section 32. The drafters of the act were aware of *Monzo* when they drafted this legislation. See, Legislative Journal - Senate 1706, 1712 (daily ed. March 10, 1986); Legislative Journal - House 398 (daily ed. March 11, 1986). The General Assembly spent numerous hours debating the merits of building a convention center in Philadelphia, and whether the project would generate sufficient jobs and revenues to justify the

---

3. Pennsylvania Constitution, Article III, section 32.

expenditure of state funds. The legislature made specific findings that: (a) the general welfare of this commonwealth is dependent upon the continual encouragement, development, growth and expansion of business, commerce and tourism within the commonwealth; (b) the development of a major convention center is most appropriate in a city of the first class; (c) the purpose of such a center should be the promotion of business and tourism in such a city; and (d) the development of such a convention center will provide benefits to the hotel industry throughout the entire area of such a city where such a center is developed. 53 Pa.C.S. §16202.

"These legislative findings are given great weight by this court, and the findings are supported by the evidence presented at trial, that all hotels in Philadelphia will benefit from the convention center. In contrast to *Monzo,* the Philadelphia Convention Center is not a special purpose project from which only a small group will benefit, rather it will benefit all of Philadelphia. Further, in *Monzo,* all hotels in every city, borough and township in Allegheny County were taxed to support a convention center for the City of Pittsburgh, which is only one of 127 municipalities in the County of Allegheny, while here only hotels in Philadelphia are taxed to support the Philadelphia Convention Center." *Leventhal, supra.*

As noted, plaintiffs do not challenge that portion of the existing hotel room rental tax which is devoted to supporting the Convention and Visitors Bureau. In this regard, the court accepts defendants' suggestion that, while plaintiffs characterize this litigation as an attack solely upon the use of the tax for the convention center, in fact, there is no logical distinction between the application of their

arguments to the use of tax proceeds for the Convention and Visitors Bureau or for the convention center itself once completed.[4] It is instructive that in other jurisdictions hotel taxes have been upheld against challenges similar to that presented here. See *Metropolitan Dade County v. Golden Nugget Group*, 448 So.2d 515 (Fla. Dist. Ct. App. 1984), approved, 464 So.2d 535 (Fla. 1985); *Second St. Properties Inc. v. Fiscal Court*, 445 S.W.2d 709 (Ky. Ct. App. 1969); *508 Chestnut Inc. v. City of St. Louis*, 389 S.W.2d 823 (Mo. Ct. App.), appeal dismissed, 382 U.S. 203 (1065); *Bailey v. Muskegon County Board of Commissioners*, 122 Mich. App. 808, 333 N.W.2d 144 (1983).

It is submitted that there is no need to make further inquiry into the value of the benefit conferred upon plaintiffs in relationship to the burden[5] imposed upon them. Certainly, this burden imposed is not palpably disproportionate to the benefits received by the plaintiffs, as stated by the legislature in 16 P.S. §16202, and under the principles and rationale set forth in *Leventhal, supra,*[6] and *Airway Arms, supra.*

---

4. Parenthetically, it is noted that to accept plaintiffs' argument that the tax may be challenged pending, but not after, completion and operation of convention center would lead to the anomalous result that no civic project could be similarly funded until that project is completed and on line.

5. At oral argument it was stated that this burden imposed on a person staying one night in an average hotel room is $1.56 or two percent of the hotel room bill.

6. The Supreme Court in *Leventhal, supra,* held that the act and the tax do not violate the uniformity clause of the Pennsylvania Constitution or the equal protection and due process clauses of the U.S. Constitution. The court said, "the act represents an appropriate exercise of the legislature's power to enact taxes directed toward a legitimate public good." *Leventhal, supra.*

## The Tax and the Act Do Not Violate the Commerce Clause of the U.S. Constitution

The commerce clause (Article I, section 8) of the U.S. Constitution provides:

"The Congress shall have the power . . . to regulate commerce with foreign nations, and among the several states . . . "

Two basic contentions are urged by plaintiffs: (1) that the tax is discriminatory to non-residents; and (2) that the tax imposes a burden on commerce which is not justified by a proportionate, related benefit.

Historically, decisions involving state taxation affecting interstate commerce have reflected tension between competing considerations — the protection of commerce from excessively burdensome state taxes and a state's need to require interstate business to pay its fair share of the cost of state and local government. In 1977, a unanimous U.S. Supreme Court in *Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), signaled the end of the formal rule that states may not tax an activity of interstate or foreign commerce. In 1978, citing *Complete Auto Transit Inc., supra*, the U.S. Supreme Court in *Department of Revenue v. Association of Washington Stevedoring Cos.*, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978), stated the following legal test:

"The court repeatedly has sustained taxes that are applied to activity with substantial nexus with the state, that are fairly apportioned, that do not discriminate against interstate commerce, and that are fairly related to the services provided by the state." 435 U.S. at 750.

Thus, analysis of the commerce clause challenge requires application of this four-part test to the factual context presented.

The first criterion requires a showing that the tax is applied to an activity embodying a substantial nexus with the state. The second parameter requires that the tax be fairly apportioned. Here, plaintiffs concede that the first two requirements of the test have been met.[7] However, they argue that the remaining two criteria are not satisfied. We disagree.

The third prong of the test dictates that the tax not discriminate against interstate commerce in favor of intrastate commerce. The purpose of the commerce clause was to create and foster a common market among the states; as such, it does not eclipse the power of sovereign states to tax, but it does limit that power. The principle consistently applied is that no state may impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business. Equal treatment of interstate commerce is the fundamental test of state taxes on commerce. The U.S. Supreme Court in *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 97 S.Ct. 599, L.Ed.2d 514 (1977), stated the principle, as follows:

"A state may no more use discriminatory taxes to assure non-residents direct their commerce to business within the state than to assure that residents trade only in intrastate commerce. As we stated at the outset, the fundamental purpose of the clause is to assure that there be free trade among several states. This free trade purpose is not confined to the

7. Plaintiffs' memorandum of law in opposition to defendants' joint motion for summary judgment states:

"The first requirement is that there be a nexus with the state imposing the tax. The second is that it be 'fairly apportioned' to activity conducted within the state. These requirements are met, since the hotels required to collect the tax are located within the commonwealth, and the tax is directly related to the use of those hotels."

freedom to trade with only one state; it is a freedom to trade with any state, to engage in commerce across all state boundaries." 429 U.S. at 334-5.

The constitutional protection does not require that all persons be treated equally at all times. Rather, the essence of the constitutional guarantee is simply that whatever statuatory classifications are made must be reasonable.

Here, the statutory class includes anyone who rents a hotel room for less than 30 consecutive days, whether actually a Philadelphia resident or non-resident. Conversely, anyone who rents a Philadelphia hotel room for 30 or more days, irrespective of his/her domicile, does not have to pay the tax. Hence, the classification is rational and those within the class are treated equally.

The governmental purpose advanced by the classification under the rationale of *Leventhal, supra,* is likewise proper.[8] Moreover, the citizens who stand to benefit from a convention center, with all its surrounding and concomitant developments, include persons, whether Philadelphians or not, who rent hotel rooms for less than 30 days.

The final part of the *Complete Auto Transit Inc. v. Brady, supra,* analysis requires a showing that the taxes are fairly related to services provided by the state. This aspect of the analysis was discussed by the U.S. Supreme Court in *General Motors Corporation v. Washington,* 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 930 (1964), as follows:

"A careful analysis of cases in the field teaches that the validity of the tax rests upon whether the state is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive

_____
8. See discussion at 24-6, *supra.* See also, 53 P.S. § 16202.

issue turns on the operating incidence of the tax. In other words, the question is whether the state has exerted its power in proper proportion to appellant's activities within the state and to appellant's consequent enjoyment of the opportunities and protections which the state has afforded. . . . The simple controlling question is whether the state has given anything for which it can ask return." 377 U.S. at 440-1. (citations omitted)

Presently, and prior to the opening of the convention center, the City of Philadelphia provides numerous services, including transportation, and police and fire protection to all those persons in the jurisdiction, including tourists, at any given time. These benefits as well as those previously discussed in this opinion demonstrate that the fourth requirement of the test has been satisified.

Plaintiffs' challenge to these latter two requirements apparently is their belief that the tax "does not reflect a fair approximation of the use of the facilities (the convention center) for whose benefit it is imposed." To the extent their contention is grounded upon the argument that the tax is a special tax it must fail under the rationale of *Leventhal, supra*.[9] To the extent this contention is based on the argument that it must be shown that each taxpayer receives a quantifiable benefit for the specific tax he/she pays, it must fail under the principles of *Airway Arms Inc., supra*.[10] See also, *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 626 (1981).

In summary, the tax does not violate the commerce clause in that it applies equally to persons involved in interstate commerce and those who are not.[11]

9. See discussion at 25-6, *supra*.

10. See 25, *supra*.

11. In this connection, *Westinghouse Electric Corp. v. Tully*, 466

### The Tax Does Not Violate the Privileges and Immunities Clause of the U.S. Constitution

The privileges and immunities clause, Article IV, section 2, clause 1, of the U.S. Constitution provides:

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

The right to travel from one state to another, and to abide in the state of destination, is a privilege and immunity of United States citizens. *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 106 S.Ct. 2317 (1986); *Shapiro v. Thompson,* 394 U.S. 618, 630-1, 89 S.Ct. 1322, 1329-30 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In *Attorney General v. Soto-Lopez, supra,* the U.S. Supreme Court defined the constitutional right to travel as follows: "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." (citations omitted)

Plaintiffs contend that the tax "imposes a burden upon interstate travel, a privilege and immunity of United States citizens." Plaintiffs' argument fails under *Soto-Lopez, supra,* because, first, the tax is not for the purpose of impeding travel. Rather, one of its stated purposes is to promote tourism which inherently means travel. Secondly, the tax is not limited to non-residents; indeed, all hotel patrons are subject to the tax irrespective of their actual residence. See *Miami Dolphins v. Metropolitan Dade County,* 394 So.2d 981 (Fla. 1981).

*United Building and Construction Trades Coun-*

U.S. 388 (1984), can be distinguished and plaintiffs' reliance on it is misplaced.

*cil of Camden County and Vicinity v. Mayor of Camden,* 465 U.S. 208, 104 S.Ct. 1020 (1984), is distinguishable from the instant action and plaintiffs' reliance on it is misplaced. In *United Building, supra,* the U.S. Supreme Court held that the privileges and immunities clause is violated, finding that the ordinance did distinguish between out-of-state citizens and some New Jersey residents, who happen to reside in Camden. In the present case, there is no such distinction. The tax must be paid not only by hotel patrons who reside out of state, but also by hotel patrons who reside in Pennsylvania. As distinguished from the ordinance in *United Building,* the tax here does not treat out-of-state citizens differently from citizens residing in Pennsylvania.

In summary, application of the tests enumerated in *Soto-Lopez, supra,* to this case leads to the conclusion that this tax does not implicate improperly the right to travel and does not, therefore, violate the privileges and immunities clause of the U.S. Constitution.

## CONCLUSIONS OF LAW

(1) The act and the tax do not violate the equal protection and due process clauses of the U.S. Constitution.

(2) The act and the tax do not violate the commerce clause of the U.S. Constitution.

(3) The act and the tax do not violate the privileges and immunities clause of the U.S. Constitution.

(4) The act and the tax are constitutional under both the U.S. and the Pennsylvania constitutions.